[No. 10-39954-1.     Division One.     December 1, 1969.]
Panel 2

ELWELL JANISCH, *Appellant,* v. JOHN R. MULLINS *et al.,*
*Respondents.*

*Levinski & Levinski, Albert L. Levinski, Schroeter & Jackson,* and *Leonard W. Schroeter,* for appellant.

*Williams, Lanza, Kastner & Gibbs* and *Kenneth J. Mc-Mullin,* for respondents.

REVIEW GRANTED BY SUPREME COURT.

HOROWITZ, A.C.J.—Plaintiff filed a complaint on June 13, 1967, against defendant physician alleging that defendant was negligent in diagnosing plaintiff's condition by an erroneous reading of an X ray of the plaintiff and that as a result, plaintiff lost his sight. The complaint, after alleging that the negligent X ray reading occurred on or about February 25, 1958, further alleged that the defendant

fraudulently . . . concealed from the plaintiff his radiological findings and his . . . negligent . . . diagnosis . . . and plaintiff's right to demand reparation . . . and thereby induced plaintiff to refrain from further inquiry . . . that plaintiff did not discover the nature . . . of the . . . fraud until March of 1967, when he first learned that his blindness was due to conditions known to the defendant . . . in 1958; . . .

The trial court on September 7, 1967, dismissed the complaint with prejudice on the ground that the 3-year statute of limitations (RCW 4.16.080(2) and 4.16.010) had run. The court apparently relied on *Lindquist v. Mullen,* 45 Wn.2d 675, 277 P.2d 724 (1954) at that time not in any respect overruled.

Plaintiff contends that for the purposes of the foregoing statutes of limitation his cause of action for negligence accrued when he discovered, or in the exercise of due care should have discovered, that his blindness was caused by the defendant's alleged negligent diagnosis. He relies upon the later cases of *Ruth v. Dight,* 75 Wn.2d 660, 453 P.2d

631 (1969); *Denison v. Goforth,* 75 Wn.2d 853, 454 P.2d 218 (1969) and *Fraser v. Weeks,* 76 W.D.2d 470, 456 P.2d 351 (1969), the latter particularly discussed *infra.* He also calls attention to the increasing trend of cases in other jurisdictions to adopt the discovery rule.[1] Defendant, relying on *Lindquist v. Mullen, supra,* contends that notwithstanding *Ruth v. Dight, supra,* and cases following it, the question of when the limitation period begins to run in cases involving mere negligent diagnosis is still an open question and that to extend the discovery rule to such cases is to exercise a legislative rather than a judicial function.

Plaintiff at oral argument suggested, without urging, that the discovery rule is applicable in this case under the fraud exception (RCW 4.16.080(4)). *Ruth v. Dight, supra* at 666 cites case support for this view. There are other cases to the contrary. *National Credit Associates, Inc. v. Tinker,* 401 S.W.2d 954 (Mo. 1966). See also *McCoy v. Stevens,* 182 Wash. 55, 58-60, 44 P.2d 797 (1935), discussed *infra.* The view we take of the matter makes it unnecessary to rely upon the fraud exception.

Prior to *Ruth v. Dight, supra,* for purposes of applying the statute of limitations, it was unnecessary to determine whether the gist of a medical malpractice action was an action for breach of a contract or an action for tort. The 3-year statute of limitations ran from the date of breach in the case of contract (*McCoy v. Stevens, supra*) and 3 years from the date of the negligent act in the case of tort (*Lindquist v. Mullen, supra*). Although *McCoy v. Stevens, supra,* seemed to hold that a malpractice action against a physician always sounds in contract, the later case of *Yeager v. Dunnavan,* 26 Wn.2d 559, 174 P.2d 755 (1946) made it clear that an injured patient could sue either for breach of contract or for tort.

If, however, the injury or damage is not discovered until after the limitation period had run, an obvious hardship

---

[1]These cases are specifically cited in *Ruth v. Dight,* 75 Wn.2d 660, at 667, 453 P.2d 631 (1969) and in *Denison v. Goforth,* 75 Wn.2d 853, at 855, 454 P.2d 218 (1969).

exists. To meet this hardship the malpractice cases have not provided a uniform answer. Annot., 80 A.L.R.2d 368 (1961). Case classifications undertaken in decisions such as *Flanagan v. Mount Eden Gen. Hosp.*, 24 N.Y.2d 427, 248 N.E.2d 871, 873 (1969) and *Yoshizaki v. Hilo Hosp.*, 50 Hawaii 150, 433 P.2d 220, 221 (1967) are helpful. It is nevertheless still useful to call attention to the principal approaches to meet the problem.

1. *The unavoidable hardship approach:* The limitation period is literally construed and is said to run from the date of the negligent act; *e.g., Lindquist v. Mullen, supra; Pasquale v. Chandler*, 350 Mass. 450, 215 N.E.2d 319 (1966); *McCluskey v. Thranow*, 31 Wis. 2d 245, 142 N.W.2d 787 (1966).[2] The hardship to an innocent plaintiff is treated as in other cases (*e.g., Golden Eagle Mining Co. v. Imperator-Quilp Co.*, 93 Wash. 692, 161 P. 848 (1916)) to be unavoidable.

2. *The avoidability approach:* Without adopting the discovery rule discussed in approach 3 *infra,* and to avoid hardship to an innocent plaintiff, the limitation period is held to begin to run from a date later than the date of the negligent act; *e.g.,* from the date of the damage (*United States v. Reid*, 251 F.2d 691 (5th Cir. 1958)); or from the date that the relationship of the physician and patient has ended (*Lundberg v. Bay View Hosp.*, 175 Ohio St. 133, 191 N.E.2d 821 (1963); *cf., Cook v. Yager*, 13 Ohio App. 2d 1, 233 N.E.2d 326 (1968)); or from the date that the treatment for the particular illness or condition has terminated (*Samuelson v. Freeman, supra*); or from the date that fraudulent concealment of the damage terminates (*Lakeman v. LaFrance*, 102 N.H. 300, 156 A.2d 123 (1959); note 1, supra); or that constructive fraud in the case of silence

[2]Accord: *e.g., Hill v. Hays*, 193 Kan. 453, 395 P.2d 298 (1964); *Mosby v. Michael Reese Hosp.*, 49 Ill. App. 2d 336, 199 N.E.2d 633 (1964); *Seger v. Cornwell*, 44 Misc. 2d 994, 255 N.Y.S.2d 744 (1964); *Roybal v. White*, 72 N.M. 285, 383 P.2d 250 (1963); *Tantish v. Szendey*, 158 Me. 228, 182 A.2d 660 (1962). The number of malpractice cases adopting the unavoidable hardship approach as opposed to the functional approach *infra* is diminishing in favor of the latter.

with probable knowledge tolls the statute (*Burton v. Tribble*, 189 Ark. 58, 70 S.W.2d 503 (1934)); or that failure to discover and remove a foreign object left in the patient's body is "continuing" negligence (*Gillette v. Tucker*, 67 Ohio St. 106, 65 N.E. 865 (1902)). See generally, W. Prosser, Law of Torts, 147 (3d ed. 1964); Sisler, *Discovery Rule: Accrual of Cause of Action for Medical Malpractice*, 25 Wash. & Lee L. Rev. 78 at 81, notes 17-19.

3. *The functional approach:* To avoid hardship to an innocent plaintiff, the statutory language describing the limitation period is construed so that the limitation period begins to run when the injured party knows, or in the exercise of due care should know, of the existence of the negligence. (Note 1 *supra; Flanagan v. Mount Eden Gen. Hosp., supra*).

a. *The conservative functional approach:* The court refuses to extend the discovery rule to cases other than those involving foreign substances which have been negligently left in the patient's body. *Coffman v. Hedrick*, 437 S.W.2d 60 (Tex. Civ App. 1968); *Flanagan v. Mount Eden Gen. Hosp., supra.*

b. *The liberal functional approach:* The discovery rule in medical malpractice cases involving the commencement of the limitation period is not limited to foreign substance cases. (*Frohs v. Greene*, ...... Ore. ......, 452 P.2d 564 (1969), discussed *infra; Fraser v. Weeks, supra*, discussed *infra; Wilkinson v. Harrington*, ......R.I. ......, 243 A.2d 745 (1968); *Yoshizaki v. Hilo Hosp.*, 50 Hawaii 150, 433 P.2d 220 (1967); *Hungerford v. United States*, 307 F.2d 99 (9th Cir. 1962) (Federal Tort Claims Act); *Costa v. Regents of Univ. of Cal.*, 116 Cal. App. 2d 445, 254 P.2d 85 at 91 (1953)).[3]

---

[3]The *Costa* case noted that the principle of discovery used in California workmen's compensation cases was extended to medical malpractice cases. An actual discovery rule is also used in the Washington workmen's compensation cases. *Nelson v. Department of Labor & Indus.*, 9 Wn.2d 621, 632, 115 P.2d 1014 (1941).

The functional approach advocating the discovery rule has strong text writer and law review support.[4]

4. *The legislative approach:* The legislature adopts the discovery rule. Conn. Gen. Stat. § 52-584 (1958); Ala. Code tit. 7 § 25(1) (1958); Ill. Rev. Stat. ch. 83 ¶ 22.10 added July 12, 1965; Laws of Oregon (1967), ch. 406, p. 823 amending ORS 12.110. *Flanagan v. Mount Eden Gen. Hosp., supra,* refers to efforts in New York to amend the statutes of limitation. Legislative changes, separately or in combination, may provide a special statutory period for malpractice cases sometimes limited and sometimes not limited to foreign substance injuries, or may lengthen the limitation period or place an outer time limit for the bringing of actions regardless of the date of discovery.

*Ruth v. Dight, supra,* adopted the functional approach in a case in which the negligence consisted of leaving a foreign substance (surgical sponge) in the patient's body upon completion of an operation. *Fraser v. Weeks, supra,* was a negligent medical diagnosis of cancer case but one which the defendant contends does not clearly resolve the issue of whether the discovery rule applies. Plaintiff, while contending that *Fraser v. Weeks* has already disposed of the problem, asks that if *Fraser* has not done so, that we extend the *Ruth v. Dight* discovery rule to a case of mere negligent diagnosis. We believe that any doubt about the applicable rule should be removed.

In our opinion, action upon the plaintiff's request involves the performance of a judicial function. We are asked

[4]*E.g.,* W. Prosser, Law of Torts, 147-8 (3d ed. 1964); Sisler, *Discovery Rule: Accrual of Cause of Action for Medical Malpractice,* 25 Wash. & Lee L. Rev. 78 (1968); Sacks, *Statutes of Limitations and Undiscovered Malpractice,* 16 Cleve.-Mar. L. Rev. 65 (1967); Note, *Foreign Object Discovery and Misdiagnosis—Is there a Difference?,* 29 U. Pitt. L. Rev. 341 (1967); Note, *The Statute of Limitations in Actions for Undiscovered Malpractice,* 12 Wyo. L.J. 30 (1957). Approval of the fraudulent concealment approach, closely related to yet distinguishable from the discovery rule, has also been urged. Hoyt, *The Statute of Limitations as a Bar in Medical Malpractice Litigation,* 44 Chi.-Kent L. Rev. 156, 160 (1967); *Malpractice and the Statute of Limitations,* 32 Ind. L.J. 528 (1957).

to construe and apply the word "accrued" with respect to negligent diagnosis as the word "accrued" is used in RCW 4.16.010 and 4.16.080 (2).[5] Illustrative case support for this view is found in *Wilkinson v. Harrington, supra; Yoshizaki v. Hilo Hosp., supra; Berry v. Branner,* 245 Ore. 307, 421 P.2d 996 (1966); *Morgan v. Grace Hosp., Inc.,* 149 W. Va. 783, 144 S.E.2d 156, 160 (1965); *Hungerford v. United States, supra; Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959). See also *Lindquist v. Mullen, supra,* at 677, 678-693.

■ The word "accrued" does not necessarily mean the same in all contexts under all circumstances and for all purposes. We bear in mind the fact that it is a limitation statute that we are construing and not merely a definition of a cause of action. We seek to construe the word "accrued" in a manner consistent with a prima facie purpose to compel the exercise of a right within a reasonable time (34 Am. Jur. *Limitation of Actions* §§ 9, 10 (1941)) without doing an avoidable injustice. The accomplishment of such a purpose seems fair only if the injured party knows or should know that he has a right to sue. If the limitation statute is intended to serve another purpose in the accomplishment of which actual or constructive knowledge of the injury is irrelevant, that purpose should clearly appear. Ideally, an empirical study that would show the dimensions of the problem, how each of the four basic approaches work and the respective benefits and burdens of each would be invaluable.[6] Thus, if we knew of the frequency with which malpractice claims are asserted after long periods of delay;

[5] Predecessor statutes have used the word "accrued" in similar fashion since 1854. RCW 4.16.010 and 4.16.080 (2) (3) had read the same way since 1854. Laws of 1854, § 1, p. 362; Laws of 1860, § 1, p. 289; Laws of 1863, § 16, p. 85; Laws of 1869, § 25, p. 8; Laws of 1873, § 25, p. 8; Code of 1881, § 25 and Rem. Rev. Stat. § 155 (1931). Washington does not place malpractice cases in a special category for purposes of the statute of limitations.

[6] Steincipher, *Survey of Medical Professional Liability in Washington,* 39 Wash. L. Rev. 704 (1964); Comment, *Wage Garnishment in Washington—an Empirical Study,* 43 Wash. L. Rev. 743 (1968), relied on in *Sniadach v. Family Fin. Corp.,* 395 U.S. 337, 341, 23 L. Ed. 2d 349, 89 S. Ct. 1820 (1969) are illustrative of studies on how a rule of law

whether the additional overhead cost of a particular approach; *e.g.*, the functional approach, creates a burden minimal or substantial to the medical profession; the extent of any increase in medical fees there may be to the patient as a result of the adoption of a particular approach, it would help us determine whether a recognized public policy is best promoted by construing the limitation statute one way or another. The cases refusing to adopt the discovery rule emphasize the right of a physician to practice his craft free of threat of stale and fraudulent claims without empirical studies to show how burdensome in fact such a threat is. Resulting hardship to a patient is considered merely a part of the price to be paid in the effort to permit the legitimate protection of physicians in practicing a science necessarily experimental. *Owens v. White*, 380 F.2d 310 (9th Cir. 1967); *Schwartz v. Heyden Newport Chem. Corp.*, 12 N.Y.2d 212, 237 N.Y.S.2d 714, 188 N.E.2d 142 at 145 (1963); *Tantish v. Szendey, supra*. On the other hand, cases adopting the discovery rule emphasize as a matter of logic and apparent fairness and unaided by cost and burden studies the necessity of protecting the right of an injured and innocent patient to present his claim on the merits.

We know of no adequate empirical study bearing upon the foregoing matters and must, therefore, make a choice of the rule to be applied in construing the word "accrued" by resorting to judicial notice, logic and precedent. Confined to these sources, we give special weight to the necessity of protecting the integrity of the relation of trust and confidence that must prevail between physician and patient to best promote proper treatment and diagnosis of the patient's condition. We should not interpret the limitation statute in a manner that will cause the patient to distrust his physician or to be under the necessity of continually checking on him in order to avoid a possible loss of

works. In ascertaining meaning, it is proper to consider the consequences of construing a statute one way or another. *Spokane County ex rel. Sullivan v. Glover*, 2 Wn.2d 162, 169, 97 P.2d 628 (1940); 50 Am. Jur. *Statutes* §§ 368, 370 (1944).

remedy in the event of malpractice. *Kelly v. Carroll,* 36 Wn.2d 482, 501, 219 P.2d 79 (1950); *Schmucking v. Mayo,* 183 Minn. 37, 235 N.W. 633 (1931); Steincipher, *Survey of Medical Professional Liability in Washington,* 39 Wash. L. Rev. 704 (1964). As between the patient and the physician, the dependence of the patient in light of the duty of the physician to properly treat the patient entitles the interest of the patient to a claim of higher priority. See note 4 *supra.*

> As stated in W. Prosser, Law of Torts, 148 (3d ed. 1964): While there will undoubtedly be cases in which this will result in shifting the hardship which must be borne by some one to the defendant, it has been said that "If, as is to be hoped, the resulting jeopardy to defendants produces a greater measure of care in connection with surgical operations, so much the better."

Other courts, after considering the policies involved, have adopted the discovery rule even with respect to claims based upon mere negligent diagnosis; *e.g., Frohs v. Greene, supra; Yoshizaki v. Hilo Hosp., supra; Hungerford v. United States, supra; Costa v. Regents of Univ. of Cal., supra; Cf. Wilkinson v. Harrington, supra. Flanagan v. Mount Eden Gen. Hosp.,* 24 N.Y.2d 427, 248 N.E.2d 871, 873 lists 11 jurisdictions that have adopted the discovery rule for malpractice cases regardless of whether a foreign substance is involved.

If the discovery rule laid down in *Ruth v. Dight,* 75 Wn.2d 660, 453 P.2d 631 (1969) is correct then *Frohs v. Greene, supra,* points out with respect to an Oregon statute of limitations similar to our own:

> On a theoretical basis it is impossible to justify the applicability of the discovery rule to one kind of malpractice and not to another. The reason for the application of the discovery rule is the same in each instance. It is manifestly unrealistic and unfair to bar a negligently injured party's cause of action before he has had an opportunity to discover that it exists. This is true whether the malpractice consists of leaving a foreign object in the body or whether it consists of faulty diagnosis or treatment.

*Fraser v. Weeks, supra,* in light of the foregoing discussion may well have intended to abolish any distinction between a foreign substance case and a case of mere negligent medical diagnosis. If the discovery rule proves excessively harsh, the remedy is with the legislature.

The judgment of dismissal is reversed.

UTTER and STAFFORD, JJ., concur.

Petition for rehearing denied January 5, 1970.