PETERSON and husband, Appellants, v. ROLOFF and another, coadministrators of the estate of Dr. Frank J. Kritter, Respondents.

*No. 262.  Argued November 27, 1972.—Decided January 30, 1973.*
(Also reported in 203 N. W. 2d 699.)

1

For the appellants there was a brief and oral argument by *S. A. Schapiro* of Milwaukee.

For the respondents there was a brief and oral argument by *Irving W. Zirbel* of Milwaukee.

WILKIE, J.   One important issue is raised by this appeal: When does a medical malpractice cause of action commence to run?

Under existing Wisconsin law there is no question but what the amended complaint states a cause of action for medical malpractice alleging negligence in the removal of Mrs. Peterson's gallbladder, the failure to remove the cystic duct and the entire gallbladder and the leaving of the foreign substance in her body at the time. The only question is: Did that cause of action ripen at the moment the negligent surgery was performed in 1954? Or in 1971, at the time Mrs. Peterson experienced abdominal inflammation? Or at the time the negligence was discovered in 1971?

As the Wisconsin law now stands the medical malpractice action accrues at the time the negligent act occurs with accompanying injury.[1]

Recently, in *Olson v. St. Croix Valley Memorial Hospital*,[2] the most recent pronouncement of the law on this subject, this court held that where Judy Olson (née Hagstrom) was given a blood transfusion of the wrong type in 1962, prior to her marriage, the cause of action accrued at the time of the improper blood transfusion and not in 1969 when her second child was born dead (a first child had been born live in 1966 but had lived only seven hours). So in the instant case the cause of action accrued at the time of the alleged negligent act, when the cystic duct and the entire gallbladder were allegedly not removed and when the foreign substance (surgical gauze) was allegedly left in the plaintiff's abdomen.

Thus, as the law now stands, the statute of limitations began to run in 1954, so that the period in which an action could be brought had long since elapsed at the time of the 1971 developments.

To reverse the trial court's holding here we are asked to alter Wisconsin law by adopting the so-called discovery rule. In *McCluskey v. Thranow*[3] we were asked to consider the adoption of the discovery rule and we said that "this question is not open to new adjudication in Wisconsin."[4] In the more recent case of *Olson v. St. Croix Valley Memorial Hospital*[5] we also refused to reconsider that rule under the particular facts of that

[1]*See Reistad v. Manz* (1960), 11 Wis. 2d 155, 105 N. W. 2d 324; *McCluskey v. Thranow* (1966), 31 Wis. 2d 245, 142 N. W. 2d 787; *Volk v. McCormick* (1969), 41 Wis. 2d 654, 165 N. W. 2d 185; *Olson v. St. Croix Valley Memorial Hospial* (1972), 55 Wis. 2d 628, 201 N. W. 2d 63.

[2]*Supra*, footnote 1.

[3]*Supra*, footnote 1.

[4]*Id.* at page 250.

[5]*Supra*, footnote 1.

case. In *Reistad v. Manz* [6] we last considered the adoption of the discovery rule on its merits, in a case where the defendant doctors had performed surgery on the deceased plaintiff in 1938 and left gauze in his abdomen. The plaintiff brought an action twenty years later. This court refused to adopt the discovery rule, stating if a change in the statute of limitations was in order, the legislature was the proper body to make that change. Although many states have adopted the discovery rule by court decision,[7] we believe that the change of the statute of limitations is peculiarly a question of policy which should be left to the legislature to make if so

[6] *Supra,* footnote 1.

[7] Decisions framed in terms of when the cause of action "accrued": *see, e. g., Owens v. Brochner* (1970), 172 Colo. 525, 474 Pac. 2d 603; *Renner v. Edwards* (1969), 93 Idaho 836, 475 Pac. 2d 530; *Chrischilles v. Griswold* (Iowa 1967), 150 N. W. 2d 94; *Flanagan v. Mount Eden General Hospital* (1969), 24 N. Y. 2d 427, 248 N. E. 2d 871; *Wilkinson v. Harrington* (1968), 104 R. I. 224, 243 Atl. 2d 745; *Janisch v. Mullins* (1969), 1 Wash. App. 393, 461 Pac. 2d 895; *Morgan v. Grace Hospital, Inc.* (W. Va. 1965), 144 S. E. 2d 156.

Courts limiting application of the rule to those cases in which a physician negligently left a foreign object in the body of a patient: *see Layton v. Allen* (Del. 1968), 246 Atl. 2d 794 (hemostat); *Spath v. Morrow* (1962), 174 Neb. 38, 115 N. W. 2d 581 (needle); *Fernandi v. Strully* (1961), 35 N. J. 434, 173 Atl. 2d 277 (wing nut); *Gaddis v. Smith* (Tex. 1967), 417 S. W. 2d 577 (sponge); *Morgan v. Grace Hospital, Inc., supra,* footnote 7, (sponge).

Other courts applying the rule to all medical malpractice cases: *see Mayer v. Good Samaritan Hospital* (1971), 14 Ariz. App. 248, 482 Pac. 2d 497; *Stafford v. Shultz* (1954), 42 Cal. 2d 767, 270 Pac. 2d 1; *City of Miami v. Brooks* (Fla. 1954), 70 So. 2d 306; *Yoshizaki v. Hilo Hospital* (1967), 50 Haw. 150, 433 Pac. 2d 220; *Tomlinson v. Siehl* (Ky. 1970), 459 S. W. 2d 166; *Johnson v. Caldwell* (1963), 371 Mich. 368, 123 N. W. 2d 785; *Wilkinson v. Harrington, supra,* footnote 7.

convinced. Four states have made this change by legislation.[8]

In recent years, our court has ruled consistently with *McCluskey*. In *Volk v. McCormick* the court, citing *McCluskey* and *Reistad,* stated:

". . . The plaintiff concedes that in Wisconsin the three-year statute of limitations for personal injuries in medical malpractice commences to run from the date the treatment or service was performed rather than from the date of the discovery of the tort." [9]

Similarly, in *Milwaukee County v. Schmidt, Garden & Erikson* [10] the court rejected a "discovery rule" in negligence actions involving architects; and in *Denzer v. Rouse* [11] the court likewise rejected such a rule with respect to malpractice of an attorney. Earlier, the court also had rejected the "discovery rule" in an action against a bank for negligently honoring a check. [12]

The question of what the statute of limitations should be as to any cause of action is a question of public policy. Two conflicting policies confront each other when statutes of limitation are presented: (1) That of discouraging stale and fraudulent claims, and (2) that of allowing meritorious claimants, who have been as diligent as possible, an opportunity to seek redress for injuries sustained. [13]

---

[8] *See:* Ala. Code Title 7, sec. 25 (1) (Supp. 1955); 9 Conn. Gen. Stat., ch. 926, sec. 52–584 (rev. 1958); 2 Ill. Rev. Stat., ch. 83, sec. 22.1 (1965); Or. Rev. Stat., sec. 12.110 (4) (1967).

[9] 41 Wis. 2d at 656, 657.

[10] (1969), 43 Wis. 2d 445, 168 N. W. 2d 559.

[11] (1970), 48 Wis. 2d 528, 180 N. W. 2d 521.

[12] *Peppas v. Marshall & Ilsley Bank* (1957), 2 Wis. 2d 144, 86 N. W. 2d 27.

[13] For good discussions of these conflicting policies, with recommendations for adopting the "discovery rule," *see* Comment, *Opening Pandora's Box? An Extension of the Discovery Rule to Negligent Diagnosis in Idaho,* 8 Idaho L. Rev. (1972), 370; Com-

We conclude that this is a matter peculiarly for legislative determination. Because of the numerous cases in which the present three-year requirement for commencing an action by a party who is the victim of medical malpractice is too short, we strongly recommend to the legislature that the basic three-year statute for negligence actions due to medical malpractice be amended.

*By the Court.*—Judgment affirmed.

HALLOWS, C. J. *(dissenting).* This case raises an important issue which should be decided by this court. As I view the problem, it presents a construction of secs. 893.14 [1] and 893.48, Stats. [2] The first section requires an action to be commenced within a prescribed period of time "after the cause of action has accrued." The second section providing for the computation of time requires the period of limitation to be computed "from

ment, *Medical Malpractice Statute of Limitations—Adoption of the Discovery Rule,* 59 Ky. L. J. (1971), 990.

[1] "893.14 **Actions, time for commencing.** The following actions must be commenced within the periods respectively hereinafter prescribed after the cause of action has accrued except that the period shall not be considered to have expired when the court before which the action is pending shall be satisfied that the person originally served knowingly gave false information to the officer with intent to mislead him in the performance of his duty in the service of any summons or civil process. In the event the court so finds the period of limitation shall be extended for one year."

[2] "893.48 **Computation of time, basis for.** The periods of limitation, unless otherwise specially prescribed by law, must be computed from the time of the accruing of the right to relief by action, special proceedings, defense or otherwise, as the case requires, to the time when the claim to that relief is actually interposed by the party as a plaintiff or defendant in the particular action or special proceeding, except that as to a defense, set-off or counterclaim the time of the commencement of the plaintiff's action shall be deemed the time when the claim for relief as to such defense, set-off or counterclaim is interposed."

the time of the accruing of the right to relief by action."
An action to recover damages for injuries to the person
must be brought within three years. Sec. 893.205, Stats.

The question is, when does a cause of action accrue
for the purpose of determining the commencement of
the statute of limitation? A majority of states which
have limitations which begin to run "after the cause of
action accrues" apply the rule that the statute of limita-
tion commences to run with the date of the negligent
act, regardless of when the patient discovers the injury.
Note, *The Statute of Limitations in Actions for Undis-
covered Malpractice,* 12 Wyoming L. J. (1957), 30, 38.
In *Reistad v. Manz* (1960), 11 Wis. 2d 155, 105 N. W.
2d 324, Wisconsin expressly rejected the discovery view
and stated the statute of limitation started to run when
the surgeon left the surgical gauze in the abdominal
cavity of the patient. In *McCluskey v. Thranow* (1966),
31 Wis. 2d 245, 142 N. W. 2d 787, we held the statute
of limitation commenced to run when the surgeon left
a hemostat in the abdominal cavity of the patient.

In medical malpractice cases at least three points of
time are involved—the time of the negligent act, the
time of the injury, and the time of the discovery. *Holi-
field v. Setco Industries, Inc.* (1969), 42 Wis. 2d 750,
758, 759, 168 N. W. 2d 177. *Holifield,* which was a prod-
ucts-liability case, held a cause of action in tort does
not accrue until someone has been injured. *See also:*
Bushnell, *Practical Aspects of Defending Products Lia-
bility Cases,* 11 Defense L. J. (1962), 99.

In every tort action there must be at least three ele-
ments—the negligent act or breach of duty, the causation,
and an injury which is recognizable in money damages.
Until the injury occurs, no harm is done and there is
nothing to be compensated for; therefore, there is no
cause of action for damages. The older cases speak of
the date of the negligent act as the time when the cause

of action accrues. *Lotten v. O'Brien* (1911), 146 Wis. 258, 131 N. W. 361; *Reistad v. Manz, supra.* However, in *Olson v. St. Croix Valley Memorial Hospital* (1972), 55 Wis. 2d 628, 201 N. W. 2d 63, we pointed out the time of the negligent act was not necessarily the same as the date when the injury occurred, although in many malpractice cases, the cause of action accrued on the date of the negligent act because the injury occurred simultaneously.

Since injury is necessary to establish a cause of action, the question becomes, what is an injury and when does an injury in a malpractice case occur? More specifically in this case, did Mrs. Peterson sustain an injury on the date when her gallbladder was removed and the cystic duct was left attached to the gallbladder remnant in her abdomen or some years later when she developed pancreatitis allegedly as a result thereof? I think when she developed pancreatitis.

In malpractice cases, some courts take the view an injury occurs when a foreign object is left in the body of a patient, even though neither the surgeon nor the patient knew of the forgotten foreign object and other than the presence of the foreign object in the abdominal cavity, no disability, disease, or pain resulted. At that time, perhaps the only monetary injury is the cost of recovering the foreign object; no actual harm is done, although it can be argued there is a possibility or a potentiality of harm. But if suit were brought at that time, the measure of damages would be speculative and for all practical purposes there would be no cause of action. *See: Future Damages in Personal Injury Actions—The Standard of Proof,* 11 Personal Injury Commentator (1968), 238.

I do not subscribe to this view of injury. "Injury" for the purpose of a tort means some harm recoverable in money damages. When such harm occurs, a cause of

action accrues for purposes of the statute of limitation. *See* my concurring opinion in *Olson v. St. Croix Valley Memorial Hospital, supra.*

The majority of cases considering what constitutes an injury when a foreign substance is left in a patient's body by malpractice, if injury is the essential date, hold the injury to be the leaving of a foreign object in the body; thus the statute of limitation commences to run simultaneously with the commission of the act of negligence. Because of the unsatisfactory result of this concept of injury, many courts so holding have attempted to modify the rule or at least ameliorate its harshness [3] by three alternative solutions: (1) Application of the contract doctrine, in which recovery may be had in contract rather than in tort and thus the statute of limitation for contracts applies, which generally provides for a longer period than the statute of limitation applied to torts; [4] (2) application of the continuous treatment doctrine, in which the statute does not run while the same doctor continues to treat the victim on the theory the negligence continues until the termination of the doctor-patient relationship which starts the statute of limitation running, [5] and (3) application of the fradu-

---

[3] *See* Note, *The Forgotten Sponge and the Statute of Limitations,* 1 Washburn L. J. (1961), 257. *See also: Calvin v. Thayer* (1957), 150 Cal. App. 2d 610, 310 Pac. 2d 59; *Huysman v. Kirsch* (1936), 6 Cal. 2d 302, 57 Pac. 2d 908; *City of Miami v. Brooks* (Fla. 1954), 70 So. 2d 306; *Billings v. Sisters of Mercy of Idaho* (1964), 86 Idaho 485, 389 Pac. 2d 224; *Mills v. Doty* (La. 1959), 116 So. 2d 710; *Perrin v. Rodriguez* (La. 1934), 153 So. 555; *Ayers v. Morgan* (1959), 397 Pa. 282, 154 Atl. 2d 788.

[4] *See Baum v. Turel* (D. C. N. Y. 1962), 206 Fed. Supp. 490; *Giambozi v. Peters* (1940), 127 Conn. 380, 16 Atl. 2d 833; *Bowers v. Santee* (1919), 99 Ohio St. 361, 124 N. E. 238; *Gillette v. Tucker* (1902), 67 Ohio St. 106, 93 Am. St. Rep. 639, 65 N. E. 865; *Klingbeil v. Saucerman* (1917), 165 Wis. 60, 160 N. W. 1051; *Suskey v. Davidoff* (1958), 2 Wis. 2d 503, 87 N. W. 2d 306.

[5] *See Schmitt v. Esser* (1929), 178 Minn. 82, 226 N. W. 196; *Thatcher v. De Tar* (1943), 351 Mo. 603, 173 S. W. 2d 760; *Budoff*

lent concealment theory based upon estoppel, in which the statute does not run until discovery where the doctor knows of his malpractice but has not disclosed it to the patient.[6] This is the same rule as that applied in other actions based on fraud. *See* sec. 330.19 (7), Stats. 1953.

Another alternative which has been adopted and is receiving growing acceptance [7] is the so-called "discovery. rule," which applies to foreign-object cases, misdiagnoses and negligent procedures.[8] This view is based upon the *inability* of the plaintiff to know of his injury. Note,

*v. Kessler* (1954), 284 App. Div. 1049, 135 N. Y. Supp. 2d 717; *Gillette v. Tucker, supra,* note 4. Presumably, and at least in New York, treatment must be related to the original negligent act. *See* Lillich, *The Malpractice Statute of Limitations in New York and Other Jurisdictions,* 47 Cornell L. Q. (1962), 339, 344.

[6] *See Krestich v. Stefanez* (1943), 243 Wis. 1, 9 N. W. 2d 130, 151 A. L. R. 1022 (malpractice, nondisclosure, fraud by representation). *See also: Allen v. Layton* (Del. 1967), 235 Atl. 2d 261; *Eschenbacher v. Hier* (1961), 363 Mich. 676, 110 N. W. 2d 731; *Rothman v. Silber* (1966), 90 N. J. Super. 22, 216 Atl. 2d 18. But see New York view that subsequent concealment of negligence by a physician constitutes at most an aggravation of the injury and does not support a separate action for fraud. *Tulloch v. Haselo* (1926), 218 App. Div. 313, 218 N. Y. Supp. 139. Failure to disclose a negligent act constitutes an act of malpractice. *Kleinman v. Lack* (1958), 6 App. Div. 2d 1046, 179 N. Y. Supp. 2d 194.

[7] *See* Annot. (1961), *Statute of Limitations—Malpractice,* 80 A. L. R. 2d 368, 388–390; 78–84 A. L. R. 2d, *Later Case Service,* 112–114 and supp. at 42.

[8] The discovery rule has also been applied in cases involving contracted diseases, so that a cause of action does not accrue until the victim knows or should have known of the disease. *See Urie v. Thompson* (1949), 337 U. S. 163, 69 Sup. Ct. 1018, 93 L. Ed. 1282; *Ricciuti v. Voltarc Tubes, Inc.* (2d Cir. 1960), 277 Fed. 2d 809; *Sylvania Electric Products v. Barker* (1st Cir. 1955), 228 Fed. 2d 842, certiorari denied (1956), 350 U. S. 988, 76 Sup. Ct. 475, 100 L. Ed. 854. *See also:* Annot. (1950), *Limitations—Contracting Disease,* 11 A. L. R. 2d 277, for the many other standards used in cases involving contracted diseases.

29 U. of Pittsburgh L. Rev. (1967), 341, 359. Under this doctrine, the cause of action does not accrue until the victim knows of the injury or should know he is injured by the malpractice. The doctrine is somewhat akin to the view an injury does not occur in malpractice until it manifests itself in some recognizable harm to the victim. From a layman's standpoint, in most cases the date of the injury and the date on which he should know he was injured will be approximately the same.

As the majority notes, statutes of limitation are the result of a public-policy determination which involved conflicting factors: (1) That of discouraging stale and fraudulent claims, and (2) that of allowing meritorious claimants who have been as diligent as possible an opportunity to seek redress for injuries sustained.[9] It seems to me an innocent victim's recovery should not be barred by a statute of limitation for an injury he does not know he has and either the concept of the injury should be changed or the statute of limitation should not commence to run until the innocent victim knows or has good cause to know he has been injured; between a negligent actor and an innocent victim, the latter should be preferred. Of course, there are other policy questions—the uncertain results involved in the medical practice, the difficulty of tracing these results with the passing of time, and the fear of false claims after lapse of time. But the public needs protection from substandard medical care. Responsibility for negligent acts would create greater public confidence in the medical profession. States recognizing the discovery rule have experienced no flood of malpractice litigation. The conscientious doctor is still legally protected by the requirement of proof of the prevailing degree of care and skill of members of the medical profession.

[9] In addition to the articles cited in the majority decision, see Note, 14 Wayne L. Rev (1968), 652, 657.

At least 26 states have adopted the discovery rule.[10] Of these 26, four have done so by statute.[11] The others have adopted it through interpretation of existing statutes, many of which were framed in terms of when the cause of action "accrued." [12] Some states limit application of the rule to those cases in which a physician negligently left a foreign object in the body of a patient.[13] Others apply the rule to *all* medical malpractice cases because any other rule of construction would allow an unjust result in other cases and the legislature would not have intended a statute to work such a result.[14]

[10] *See* Annot. (1968), *supra*, note 7, and Persons, *Medical Malpractice—Statute of Limitations Tolled until Patient Can Reasonably Discover Foreign Object Negligently Left in his Body During Surgery*, 8 Georgia State Bar J. (1971), 244, 250.

[11] *See* Ala. Code Title 7, sec. 25 (1) (Supp. 1955); 9 Conn. Gen. Stat., Rev., ch. 926, sec. 52–584 (1958); 2 Ill. Rev. Stat., ch. 83, sec. 22.1 (1965); Or. Rev. Stat., sec. 12.110 (4) (1967). The Oregon court, however, in *Frohs v. Greene* (1969), 253 Or. 1, 452 Pac. 2d 564 (decided under an old statute which did not provide for the "discovery rule") held the "discovery rule" applied to both cases involving negligent treatment and cases involving negligent diagnosis. However, the present statute is so framed as to appear to apply only to cases involving foreign objects left in the body.

[12] *See, e. g., Owens v. Brochner* (1970), 172 Colo. 525, 474 Pac. 2d 603; *Renner v. Edwards* (1969), 93 Idaho 836, 475 Pac. 2d 530; *Chrischilles v. Griswold* (Iowa 1967), 150 N. W. 2d 94; *Flanagan v. Mount Eden General Hospital* (1969), 24 N. Y. 2d 427, 248 N. E. 2d 871; *Wilkinson v. Harrington* (1968), 104 R. I. 224, 243 Atl. 2d 745; *Janisch v. Mullens* (1969), 1 Wash. App. 393, 461 Pac. 2d 895; *Morgan v. Grace Hospital, Inc.* (W. Va. 1965), 144 S. E. 2d 156.

[13] *See Layton v. Allen* (Del. 1968), 246 Atl. 2d 794 (hemostat); *Spath v. Morrow* (1962), 174 Neb. 38, 115 N. W. 2d 581 (needle); *Fernandi v. Strully* (1961), 35 N. J. 434, 173 Atl. 2d 277 (wing nut); *Gaddis v. Smith* (Tex. 1967), 417 S. W. 2d 577 (sponge); *Morgan v. Grace Hospital, Inc., supra*, footnote 12 (sponge).

[14] *See Mayer v. Good Samaritan Hospital* (1971), 14 Ariz. App. 248, 482 Pac. 2d 497; *Stafford v. Shultz* (1954), 42 Cal. 2d 767, 270 Pac. 2d 1; *City of Miami v. Brooks* (Fla. 1954), 70 So. 2d

As a Texas court noted, the question of when a cause of action accrues is a judicial one, and the answer must be founded on reason and justice. *Gaddis v. Smith, supra,* footnote 13.

Those courts rejecting the discovery rule reason the legislature is the proper body to change rules relating to limitations on actions and that strict limitations promote stability and avoid the uncertainties and burdens attending the defense against old claims.[15] The majority opinion takes this view and relies on *Reistad v. Manz, supra,* and *McCluskey v. Thranow, supra,* for the proposition that if the interpretation should be changed, the legislature should do it. The legislature's inaction, reasons the majority prevents this court from the adoption of the discovery rule.

But it seems to me that if the majority views the discovery rule as foreign to the traditional concept of a cause of action almost the same result can be obtained by a more realistic view of what an injury is. Such a view can be adopted under the present language of secs. 893.14 and 893.48, Stats. The legislative history of these sections does not show any affirmative action on the part of the legislature to reject the discovery rule on its merits. The *expressio unius est exclusio alterius* doctrine relied on in *Peppas v. Marshall & Ilsley Bank* (1957), 2 Wis. 2d 144, 149, 86 N. W. 2d 27, and in *McCluskey v. Thranow, supra,* is misplaced. In *Peppas* the court was referring to the fraud section of sec. 330.19 (7), Stats.,

306; *Yoshizaki v. Hilo Hospital* (1967), 50 Haw. 150, 433 Pac. 2d 220; *Tomlinson v. Siehl* (Ky. 1970), 459 S. W. 2d 166; *Johnson v. Caldwell* (1963), 371 Mich. 368, 123 N. W. 2d 785; *Wilkinson v. Harrington, supra,* footnote 12.

[15] For a discussion of the rationale behind rejection of the "discovery rule," see Note, *Limitation of Actions—In a Malpractice Action the Statute of Limitations Does Not Begin to Run Until the Patient Knows or Has Reason to Know of His Injury,* 15 Vanderbilt L. Rev. 657 (1962).

for the exception and by inference excluded a contract action against the bank governed by the same section. The problem of the three-year statute of limitation in sec. 893.205 (1) was not before the court or considered by it. In *McCluskey* we erroneously stated *Peppas* held the statute of limitation began to run at the time the bank negligently honored a check, despite the fact the plaintiff did not discover the negligence until a later date. *Peppas* in fact held the "cause of action accrued when he received the statement and cancelled vouchers from the defendant in May, 1946." This holding is much closer to the discovery rule because the act of honoring the forged check had already occurred and until the depositor received his bank statement he had no cause to believe he was injured by the bank's act. Likewise, the so-called exception in workmen's compensation cases is not controlling. The Workmen's Compensation Act is a complete and separate statutory scheme in which the employee must receive notice of the injury within thirty days after the occurrence of the injury or after the employee knew or ought to have known (not of the injury but) of the nature of his disability and its relationship to his employment.

I do not accept the proposition relied on in some of our decisions that inaction on the part of the legislature or its failure to reach a bill during a session or the failure of a bill to be reported out of committee is the equivalent of a mandate from the legislature. The legislature does not read our advance sheets and silence or inaction on its part should not serve as an excuse for inaction on the part of this court. *See* my dissents in *Vincent v. Pabst Brewing Co.* (1970), 47 Wis. 2d 120, 131, 177 N. W. 2d 513, and *Garcia v. Hargrove* (1970), 46 Wis. 2d 724, 737, 176 N. W. 2d 566.

The discovery doctrine in Wisconsin is now placed by the majority opinion in the limbo of jurisprudence along

with the doctrine of pure comparative negligence, and the dram shop doctrine, to be saved, if at all, by the legislature. But, perhaps, this court will still change its mind. In *Schwenkhoff v. Farmers Mut. Automobile Ins. Co.* (1960), 11 Wis. 2d 97, 104 N. W. 2d 154, we solemnly said the failure of the legislature to enact a bill designed to change the rule that an unemancipated minor could not maintain an action in tort against its negligent parent for personal injuries constituted an expression by the legislature that no change should be made by this court. Yet three years later we reversed our position in *Goller v. White* (1963), 20 Wis. 2d 402, 122 N. W. 2d 193, on the basis of *Holytz v. Milwaukee* (1962), 17 Wis. 2d 26, 115 N. W. 2d 618, and said the reasons advanced in *Schwenkhoff* for not changing the parental immunity rule no longer applied. In *Holytz* we held it was our responsibility to change a court-made rule when we deemed the change necessary in the interest of justice even though the legislature had refused to make the changes. Likewise, in *Smith v. Congregation of St. Rose* (1953), 265 Wis. 393, 398, 61 N. W. 2d 896, we stated dissatisfaction with the charitable immunity doctrine should be addressed to the legislature. But in *Kojis v. Doctors Hospital* (1961), 12 Wis. 2d 367, 373, 107 N. W. 2d 131, 107 N. W. 2d 292, this court changed its position and abolished the doctrine of immunity.

Dramatically, the appellate court's power and duty to formulate and articulate a coherent body of modern jurisprudence has been stated in *Pierce v. Yakima Valley Memorial Hospital Asso.* (1953), 43 Wash. 2d 162, 178, 260 Pac. 2d 765, 774, "We closed our courtroom doors without legislative help, and we can likewise open them." Our courts should be alive to the demands of justice. Here, the legislature has not defined accrual of a cause of action and this case calls for the exercise of our judicial duty to interpret the statutory language

"after the cause of action has accrued" so as to offer reasonable protection to the innocent victim of medical malpractice.