PINGEL, Appellant, v. THIELMAN and another, Respondents.

*April 30—June 4, 1963.*

For the appellant there was a brief and oral argument by *Wayne W. Schlosser* of Sheboygan.

For the respondents there was a brief and oral argument by *Ben E. Salinsky* of Sheboygan.

CURRIE, J. The sole issue on this appeal is whether the trial court abused its discretion in granting a new trial in the interest of justice under sec. 270.49, Stats. A trial court has the power to grant a new trial in the interest of justice because the verdict is against the great weight of the evidence. *Bohlman v. Nelson* (1958), 5 Wis. (2d) 77, 92 N. W. (2d) 345; *Guptill v. Roemer* (1955), 269 Wis. 12, 19, 68 N. W. (2d) 579, 69 N. W. (2d) 571; and *Sichling v. Nash Motors Co.* (1932), 207 Wis. 16, 21, 238 N. W. 843. This court declared in the *Bohlman Case* (p. 80):

"The trial court may in the exercise of a proper discretion order a new trial in the interest of justice when a jury's verdict is against the great weight of the evidence, even though it cannot be held as a matter of law that the answer is wrong."

The part of the verdict which the trial court considered to be against the great weight of the evidence was the finding that defendant Thielman was negligent with respect to yielding the right-of-way. This finding precluded a finding that plaintiff was causally negligent in not yielding the right-of-way. Had the jury found plaintiff causally negligent in this respect in addition to being causally negligent as to lookout, it in all probability would have attributed a greater percentage than 25 percent of the total aggregate negligence to plaintiff. A review of the pertinent evidence bearing on the right-of-way issue is necessary in order to ascertain whether any reasonable basis existed for the trial court's conclusion that the jury's finding on this issue was against the great weight of the evidence.

The accident happened at about 8:45 p. m. at the intersection of Pennsylvania avenue and Eighth street in the city of Sheboygan. Eighth street runs north and south and Pennsylvania avenue runs east and west with the two in-

tersecting at right angles. Eighth street is 56 feet, 6 inches wide from curb to curb and Pennsylvania avenue is 48 feet wide. Eighth street carries four lanes of traffic, two moving north and two south. There is an automatic stop-and-go light on each of the four corners of the intersection. The light cycle of these lights totaled 70 seconds at the time of the accident. The light cycle governing Eighth street traffic was apportioned as follows: 38 seconds green, 4 seconds amber or yellow, and 28 seconds red; while the cycle governing traffic on Pennsylvania avenue was apportioned as follows: 24 seconds green, 4 seconds amber or yellow, and 42 seconds red.

The governing statutes are secs. 346.23 (1) and 346.25 which provide:

"346.23 CROSSING AT CONTROLLED INTERSECTION OR CROSSWALK. (1) At an intersection or crosswalk where traffic is controlled by traffic control signals or by a traffic officer, the operator of a vehicle shall yield the right of way to a pedestrian crossing or who has started to cross the highway on a green or 'GO' or 'WALK' signal and in all other cases pedestrians shall yield the right of way to vehicles lawfully proceeding directly ahead on a green or 'GO' signal."

"346.25 CROSSING AT PLACE OTHER THAN CROSSWALK. Every pedestrian crossing a roadway at any point other than within a marked or unmarked crosswalk shall yield the right of way to all vehicles upon the roadway."

Plaintiff testified as follows: That evening he went to a tavern and restaurant located one block east of the intersection where the accident occurred. There he drank "two or three beers" and ate supper. Then he went to another tavern located on the west side of Eighth street one-half block south of its intersection with Pennsylvania avenue where he stayed for about an hour and had two or three more beers. (The proprietor testified that plaintiff was

there between an hour and a half and an hour and three quarters and was served three seven-ounce glasses of beer.) Plaintiff left this second tavern some time after 8 and then proceeded north on the west side of Eighth street until he reached the Wisconsin Power & Light Company building at the southwest corner of the intersection with Pennsylvania avenue. He started to cross this intersection from west to east with the traffic light controlling Pennsylvania avenue traffic on green. It was raining and he had no raincoat or umbrella. "From west I wanted to go east. Right where Fessler-Kuck is." The Fessler-Kuck building is situated at the northeast corner of the intersection. Nevertheless, plaintiff denied that he was crossing diagonally toward this destination but stated that he was proceeding easterly within the lines of the south crosswalk. He never saw the car that struck him and did not know where in the intersection the accident took place. He stated that he "was pretty near over," or across the intersection, when the green light turned to yellow.

Defendant Thielman was sixteen years old at the time of accident and had had but two months of driving experience. She was accompanied by five other girls, and they were on their way to a dance being held at a small village a few miles north of Sheboygan. She testifed as follows: As she approached the intersection the light changed from red to green when she was at the alley which intersects Eighth street about 151 feet south of the south curbline of the intersection. She was driving in the westerly of the two northbound traffic lanes and proceeding at a speed of between 12 and 15 miles per hour. When she first saw plaintiff he was 8 or 9 feet in front of the car and running in a northerly direction. She immediately applied her brakes and the car struck him. He was north of the north line of the south crosswalk but she did not know how far or the point of impact.

Only two of the five passengers in the Thielman car testified, both having been called as witnesses by the plaintiff. These were Mary Mannebach and Cheryl Meyers. An earlier written statement made by Mary Mannebach was read into the record as part of her testimony. The salient portions of her testimony and statement are: The Thielman car was traveling at a speed of about 20 miles per hour in the northbound traffic lane nearest the center of the street. It was raining hard. She noticed the traffic light turn green when the car was at the alley one-half block south of the intersection. When the front of the car was in the lines of the south crosswalk, she saw plaintiff in front of the car. Plaintiff was "sort of hunch-backed." He looked up and started to run to the north. Nobody had time to say anything before the car hit him. At the time of impact the car's speed was 15 miles per hour. Defendant Thielman applied her brakes immediately after hitting plaintiff.

Cheryl Meyers testified as follows: Defendant Thielman slowed down before the traffic light changed to green and then accelerated "somewhat." Her car was "just north of the alley" when the light changed to green. Defendant Thielman did not regain "normal speed" before the accident (although the witness did not know what this speed was). Miss Meyers first saw a shadow and then the face of a man in front of the car, and then she heard the impact. The rain made things "a little more blurry." She does not think defendant Thielman had time to apply the brakes before the impact.

Mrs. Jane Sargent testified as a witness for defendants as follows: She is employed as a nurse's aid at one of the city hospitals. She was driving west on Pennsylvania avenue approaching the intersection from the east when the traffic light changed to red. At one point she testified that this change occurred about a half block from the intersection, but at another point she stated that the light was just

changing from amber to red when she brought her car to a stop at the intersection. After stopping her car, she noticed a man next to the Wisconsin Power & Light Company building, which was at the southwest corner of the intersection, "not on the curbing." He was of the same size and build and dressed the same as was plaintiff whom she later attended while he was lying on the pavement after the accident. After first seeing this man on the sidewalk at the southwest corner, she glanced elsewhere and was reaching in her purse for some Kleenex when she heard a thud. She then saw the figure of a man thrown up in the air in front of the Thielman car toward the northeast corner of the intersection. The Thielman car stopped within a car length after she heard the thud. The traffic light controlling the movement of Mrs. Sargent's car turned to green about a half minute after the accident. Mrs. Sargent got out of her car and went over to plaintiff. He told her he must have slipped. Mrs. Sargent could smell an odor of alcohol on his breath.

Thomas Zimmerman, a police officer, took measurements after arriving at the scene of the accident shortly after it happened. There was a blood spot on the pavement where plaintiff was lying. This blood spot was 21 feet west of the west line of the east crosswalk of the intersection. A scale map of the intersection received in evidence discloses that the west line of the east crosswalk is also the east curbline of the intersection. This blood spot was also 24.4 feet south of the south line of the north crosswalk. The right front of the Thielman car was standing about 16 feet south and slightly west of the blood spot. There is no evidence that defendant Thielman turned her car either to the left or right at any time immediately before or after the impact.

The foregoing testimony clearly afforded the trial court a reasonable basis for concluding that the great weight of the evidence established that plaintiff attempted to cross Eighth street with the light against him. This evidence established

that the Thielman car was at the alley about 151 feet south of the south curbline of the intersection when the traffic light for Eighth street traffic changed to green. At that instant the traffic light for Pennsylvania avenue traffic would have changed from amber to red after having been on amber for 4 seconds. No witness placed defendant Thielman's speed in traversing the 151 feet to the intersection at more than 20 miles per hour and it could well have been less during part of that distance. According to Wisconsin's Manual for Motorists, issued by the motor vehicle department, an automobile traveling at a speed of 20 miles per hour travels about 29 feet per second. Thus it necessarily took the Thielman car at least 5 seconds to travel to the intersection after the traffic light for Eighth street traffic had turned green. This means that at least 9 seconds elapsed between the time that the light controlling Pennsylvania avenue traffic turned from green to amber and the time of impact. Plaintiff's testimony that he was walking fast when he crossed the intersection is undisputed. The facts that he had neither umbrella nor raincoat and that it was raining hard tend to corroborate his statement that he was hurrying. Therefore, it is inconceivable that he was not walking at a speed of at least three to four miles per hour.

If plaintiff walked at a speed of three miles per hour, he would cover 4.4 feet per second or 39.6 feet in 9 seconds. At a speed of four miles per hour, he would cover 5.8 feet per second or 52.2 feet in 9 seconds. At the most plaintiff had traversed but 35 feet of the intersection when struck, assuming he was struck in the crosswalk.[1] If he was not walking within the lines of the south crosswalk while cross-

[1] The width of Eighth street was 56 feet, 6 inches. After the accident, plaintiff lay at a point 21 feet west of the east line of the intersection. Since he was moving in a northeasterly direction when struck, and the right front of the Thielman car stopped a little farther west than 21 feet from the east line of the intersection, the probability is that plaintiff had not quite traversed 35 feet from the west when struck.

ing, then defendant Thielman was entitled to the right-of-way under sec. 346.25, Stats.

Not only do the foregoing computations suggest that plaintiff started to cross against the light, but the testimony of Mrs. Sargent clearly establishes that this was so. When she saw plaintiff on the sidewalk at the southwest corner of the intersection—before he started to cross—the Pennsylvania avenue traffic light was on red. Plaintiff's own testimony, that he was "pretty near" across the intersection when the traffic light changed from green to amber, is entitled to very little weight because if true, he would have had 9 seconds' time to complete his crossing before the Thielman car reached the intersection.

Because the trial court had a reasonable basis for its conclusion that the jury's verdict with respect to the right-of-way question was against the great weight of the evidence, it did not abuse its discretion in granting a new trial in the interest of justice.

*By the Court.*—The order appealed from is affirmed.