GREMBAN and another, Plaintiffs, v. BURKE and others, Defendants. [Three appeals.]

*November 2—November 29, 1966.*

For the plaintiffs there was a brief by *Peickert, Anderson, Fisher, Shannon & O'Brien* and *Gerald M. O'Brien*, all of Stevens Point, and oral argument by *Hiram D. Anderson*.

For the defendants Rolland F. Burke and State Farm Mutual Insurance Company there were briefs by *Schmidt & Thibodeau* of Wisconsin Rapids, and oral argument by *Leon S. Schmidt*.

For the defendants Clearfield Cheese Company and Employers Mutual Liability Insurance Company of Wisconsin there were briefs by *Brazeau, Brazeau, Potter & Cole* of Wisconsin Rapids, and oral argument by *Richard S. Brazeau*.

CURRIE, C. J. The issues presented by this appeal and cross appeal are three:

(1) Did the trial court err in granting a new trial on the ground of error in the instructions?

(2) If the foregoing question is answered in the affirmative, do other grounds of error raised by plaintiff's motions after verdict require a new trial?

(3) If no prejudicial error occurred during the course of trial, should a new trial be granted in the interest of justice?

*Instructions to Jury.*

Plaintiff's counsel requested the trial court to include in its instructions, with respect to the issue of plaintiff's negligence, a reading of sec. 328.44 (now sec. 891.44), Stats., which provides:

"It shall be conclusively presumed that an infant minor who has not reached the age of 7 shall be incapable of being guilty of contributory negligence or of any negligence whatsoever."

The trial court refused this request but did give the following instruction, which is Wis J I—Civil, Part I, 1010:

"The evidence reveals that Chris Gremban, at the time of the accident, was a child seven years, six months, seven days old. The care required of such a child depends upon his or her age, capacity, discretion, knowledge, and experience. Negligence on the part of a child is failure to exercise that degree of care which is ordinarily exercised by a child of the same age, capacity, discretion, knowledge, and experience, under the same or similar circumstances. In determining whether or not Chris Gremban was exercising the care that one of his age, capacity, discretion, knowledge, and experience would exercise under the same or similar circumstances, due consideration should be given to the child's instincts and impulses, for while the child may have the knowledge of an adult respecting dangerous acts, he may not have the prudence, discretion, or thoughtfulness to avoid hazards or risks to which he is exposed."

With respect to the comparative-negligence question, the trial court further instructed:

"In answering the comparison negligence question, if you are to answer it, you should take into consideration that Rolland Burke was an adult and Chris Gremban was a child . . . ."

In ruling on motions after verdict the trial court in its memorandum decision concluded that it was error not to have read the provisions of sec. 328.44 (now sec. 891.44), Stats., to the jury. As a reason for this conclusion the trial court stated:

"However, the jury verdict apportioned the negligence at 57% on the Plaintiff, Chris Gremban, and 43% on the Defendant, Rolland F. Burke. The Court is convinced that the jury did not appreciate the fact that

different standards of ordinary care apply to the different parties."

The decision then went on to relate some of the evidence tending to establish negligence on defendant's part that the trial court apparently concluded had not been properly reflected in the 43 percent finding in the comparison question in view of the tender age of plaintiff.

This court does not agree that it was error to have failed to include a reading of former sec. 328.44 (now sec. 891.44), Stats., in the instruction relating to the issue of plaintiff's negligence. Not only do we deem the aforequoted instructions adequate to apprise the jury of the different standard to be applied in determining the negligence of a child of the age of plaintiff in contrast to that of an adult, but we believe a reading of the statute to the jury should be discountenanced.

The provisions of former sec. 328.44 (now sec. 891.44), Stats., represent a policy decision by the legislature that in the eyes of the law a child under seven years of age is presumed to be incapable of negligence. This does not mean that a child under seven cannot be guilty of negligence *as a fact* although not in law. Cases prior to the enactment of sec. 328.44 held that a child under seven could be negligent.[1] A jury could reasonably conclude that an intelligent child under seven could be guilty of some negligence. A possible harm in reading former sec. 328.44 to the jury in the instant case would be to cause the jury in answering the comparative-

[1] *Ruka v. Zierer* (1928), 195 Wis. 285, 218 N. W. 358, indicated that this court was committed to an absolute rule that children under about five and one-half years of age were incapable of negligence. In 1937, in *DeGroot v. Van Akkeren* (1937), 225 Wis. 105, 273 N. W. 725, this court flatly ruled that a child of approximately six years of age *was* capable of negligence. In 1954, it was held that a child under five and one-half was incapable of negligence. *Shaske v. Hron* (1954), 266 Wis. 384, 63 N. W. (2d) 706. In 1959, the legislature enacted sec. 328.44.

negligence question to conclude that they ought to measure plaintiff's intelligence at age seven years, six months, and six days against what it must have been at age seven. This would be introducing an extraneous element which ought not to be considered by the jury.

The trial judge in holding that it was error to refuse the instructions which incorporated former sec. 328.44, Stats., and counsel for plaintiff on this appeal, place much reliance on *Bell v. Duesing* [2] to support their position. In that case Duesing struck Christine Bell, a child of five years, eleven months, and three weeks of age, as she attempted to cross a street in the city of Milwaukee. The jury returned a verdict finding Duesing 80 percent causally negligent and the child 20 percent negligent. This court on appeal sustained the apportionment and stated, at page 52:

"Six months prior to the accident, because of her age, the little girl could not, as a matter of law, have been found negligent. The jury *could* consider that fact." (Emphasis supplied.) [3]

*Bell v. Duesing* was decided less than three years after this court in *Shaske v. Hron* [4] had held "There is an age of a child at which general experience declares him to be *non sui juris*, and it has been generally considered that a child under five and one-half years of age is incapable of either contributory or primary negligence." Thus the aforequoted statement from *Bell v. Duesing* was grounded on a minimum age which the court believed coincided with general experience, which may not be the case with the minimum higher age subsequently set by the legislature.[5] However that may

---

[2] (1957), 275 Wis. 47, 80 N. W. (2d) 821.

[3] Id. at page 52.

[4] Footnote 1, *supra*.

[5] In making this comment we do not disagree with the action of the legislature which was undoubtedly motivated by humane policy considerations in setting the minimum age at seven years.

be, to the extent that *Bell v. Duesing* implies that it is proper to instruct a jury that a child of the age of seven, as a matter of law, cannot be found negligent, it is now disapproved.

*Other Alleged Errors Relied Upon to*
*Support the Order for New Trial.*

Three other alleged errors occurring during the course of trial were urged in plaintiff's motions after verdict as grounds for a new trial. All were rejected by the trial court.

Two of these occurred during the cross-examination of Constable Driscoll, who investigated the accident shortly after it occurred. Outside of plaintiff's six-year-old brother, the only other witness to the accident was one Schneider. Schneider had died prior to trial. Counsel for defendant by repeated questions sought to elicit from Driscoll some statement made by Schneider with respect to the accident which would be favorable to defendant. These questions were objected to by plaintiff's counsel as calling for answers that would be hearsay. The objections were sustained. However, the trial court denied the request by plaintiff's counsel that the jury be instructed to disregard any reference to Schneider and to draw no inference one way or another as to what he might have told Driscoll. While we cannot condone defendant's counsel's persistent efforts over objection to elicit obviously hearsay evidence, we find no prejudicial error in this incident.

This question was also put to Driscoll:

"*Q.* Were there some things that you had a duty to perform that you haven't told the jury about?"

Plaintiff's counsel objected to this question on the ground of it being immaterial and irrelevant, but the objection was overruled. Driscoll then answered:

"*A.* If there was any clear violation, sure, there would be an arrest made."

Thereupon the witness was asked whether he had arrested defendant after the accident. Timely objection to this question was sustained. Sometime later during the cross-examination defendant's counsel asked the following question and received the following answer:

"*Q.* Well, you have got many functions as a police officer and I want to know if you had performed any other functions yourself in addition to the investigation? *A.* I did not make no arrest."

Plaintiff's counsel moved that the answer be stricken and the jury instructed to disregard it. The motion was granted and the jury was instructed accordingly.

While we cannot excuse defendant's counsel's conduct in again asking the objectionable question about performing "other functions" in order to elicit the inadmissible answer that no arrest was made, we find no prejudice resulting therefrom which would require a new trial. The jury did find defendant negligent and attributed 43 percent of the aggregate causal negligence to him.

The third alleged error manifested itself in the jury's answer to the question of the verdict which inquired:

"At what sum do you assess the damages sustained by the Plaintiff, Chris Gremban, with respect to personal injuries?"

The jury's original answer written in ink was "(43% of $40,000) = $17,200.00." The jury unsuccessfully attempted to obscure the bracketed computation by means of a lead pencil leaving the answer "= $17,200.00." We agree with plaintiff's contention that this manifestly demonstrates that the jury disregarded the following portion of the trial court's instructions:

"You are to answer the questions solely upon the evidence received on this trial. I have previously given you certain instructions. You are to use those instructions along with the ones I shall now give you in answering these questions, guided by your own sound judgment and considering the evidence. You should not concern yourself about whether your answers will be favorable to one party or to the other nor with what the final result of the lawsuit may be."

The trial court on motions after verdict determined that, because $17,200 was reasonable and amply supported by the evidence, plaintiff was entitled to no relief because of this claimed error. We do not think it reasonable to assume, as does plaintiff's counsel, that this failure of the jury to follow the trial court's instruction with respect to determining damages carried over into other questions of the verdict such as the comparative-negligence question. So long as the answer to the comparative-negligence question is permitted to stand, this failure to follow instructions with respect to determining damages is immaterial.

### New Trial in Interest of Justice.

It is apparent from the trial judge's memorandum decision that he deemed the jury's comparison of negligence against the great weight of the evidence. If the order for new trial had been grounded on promoting the interest of justice because the comparison of negligence was contrary to the greater weight of the evidence in that too large a percentage was attributed to plaintiff, we would have no hesitation in finding this not to have been an abuse of discretion.

If we did not have this expression by the trial judge, the question would be extremely close as to whether this court should grant a new trial in the interest of justice. The evidence tends to indicate a considerable degree of negligence on the part of defendant. In spite of the

extremely icy pavement and his seeing two young boys running toward the street, defendant failed to reduce his speed to the extent that he could stop his car before one of them ran into the street across his path. The fact that the car skidded approximately 84 feet after defendant applied his brakes is most significant. The particular rate of speed at which defendant was then driving measured in terms of miles per hour is not nearly as crucial as the fact that he was then driving too fast for the condition of the pavement and the near presence of small children. The evidence strongly tends to establish a violation by him of sec. 346.57 (2) and (3), Stats., which provide:

"(2) REASONABLE AND PRUDENT LIMIT. No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard for the actual and potential hazards then existing. . . .

"(3) CONDITIONS REQUIRING REDUCED SPEED. The operator of every vehicle shall, consistent with the requirements of sub. (2), drive at an appropriate reduced speed . . . when passing school children . . . and when special hazard exists with regard to other traffic or by reason of weather or highway conditions."

On the other hand, while the act of plaintiff in running across the street into the path of an oncoming car would be extremely negligent conduct on the part of an older child, plaintiff's tender age tends to somewhat mitigate this.

In view of these considerations we have concluded that justice probably miscarried and that the new trial ordered by the trial court should be affirmed to the extent that it requires a relitigation of the negligence issues. This result is grounded on the exercise of our discretion under sec. 251.09, Stats., to order a new trial in the interest of justice.

Because of the manifest disregard of the instructions by the jury in answering the damage question the new trial should extend to damages as well as negligence.

*By the Court.*—The order is modified so as to direct a new trial on all issues, and, as so modified, is affirmed.