VINCENT (Dennis), by Guardian *ad litem,* Plaintiff and Appellant, VINCENT (Ronald), Plaintiff, v. PABST BREWING COMPANY and others, Defendants and Respondents.

*No. 232. Argued April 28, 1970.—Decided June 5, 1970.*
(Also reported in 177 N. W. 2d 513.)

For the appellant there were briefs and oral argument by *David L. Walther*, guardian *ad litem*, attorney, and *Thomas A. Plein* of counsel, both of Milwaukee.

For the respondents there was a brief by *Wickham, Borgelt, Skogstad & Powell*, attorneys, and *Reuben W. Peterson, Jr.*, and *George W. Greene* of counsel, all of Milwaukee, and oral argument by *Mr. Peterson*.

A brief amicus curiae was filed by *George P. Kersten* of Milwaukee, for the American Trial Lawyers Association.

A brief amicus curiae was filed by *Conrad H. Johnson* of Madison, for Insurance Trial Counsel of Wisconsin.

HANLEY, J. Two related questions are presented on this appeal:

(1) Should the doctrine of pure comparative negligence be adopted in Wisconsin; and, if so,

(2) Should such adoption be accomplished by this court rather than by the legislature?

Under the current law in Wisconsin, the appellant can recover nothing from the respondents because his negligence exceeded that of the respondent Nye. Under pure comparative negligence, however, appellant would recover 40 percent of his damages, for pure comparative negligence never bars recovery. Instead, it merely reduces the recoverable amount of one's damages by the percentage of his negligence. In considering the appellant's contention that a doctrine of pure comparative negligence should be adopted, the Wisconsin history of both contributory negligence and comparative negligence should be briefly noted.[1]

---

[1] *See:* Hallows, *Comparative Negligence*, 19 Federation of Insurance Counsel Quarterly, No. 3 (1969), 71; and Whelan, *Comparative Negligence*, 1938 Wis. L. Rev. 465.

The doctrine of contributory negligence as a complete bar to recovery was originally adopted by the English courts in *Butterfield v. Forrester* (1809), 11 East. 60, 103 Eng. Rep. 926. This doctrine then spread to this country and was adopted by this court in *Chamberlain v. Milwaukee & Mississippi RR. Co.* (1858), 7 Wis. 367, 374 (*425, *431), and in *Dressler v. Davis* (1858), 7 Wis. 449, 452 (*527, *531). In order to avoid the harshness of the doctrine of contributory negligence, which had its origin in an era of economic individualism, the Wisconsin legislature in 1875 created what exists in our present statutes as sec. 192.50, Stats.[2] This section, however, is limited in its application to railroads and their employees. It was not until 1931[3] that our legislature passed, for general application, what is now sec. 895.045.

In its present form sec. 895.045, Stats., reads:

**"Contributory negligence; when bars recovery.** Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering."

Noting that contributory negligence is a court-adopted doctrine, the appellant contends that such doctrine has only been partially eliminated by sec. 895.045, Stats. In other words, the appellant contends that the statute eliminates the doctrine where the negligence of the defendant exceeds that of the plaintiff, but that the court-adopted doctrine remains in effect where the negligence of the plaintiff equals or exceeds that of the defendant. Thus, according to the appellant, it is not sec. 895.045, but the common-law doctrine of contributory negligence (to the extent it was left unchanged by the statute)

[2] Ch. 173, Laws of 1875.
[3] Ch. 242, Laws of 1931.

which bars his recovery. If, in fact, such were the case, this court, of course, would have authority to change the common law.

As to the relative merits of pure comparative negligence and the Wisconsin application of comparative negligence, much has been written. In reference to the Wisconsin application of partial comparative negligence, Professor Prosser has stated:

"It is obvious that a slight difference in the proportionate fault may permit a recovery; and there has been much quite justified criticism of a rule under which a plaintiff who is charged with 49 per cent of the total negligence recovers 51 per cent of his damages, while one who is charged with 50 per cent recovers nothing at all. Actually, of course, juries almost never indulge in such refined hair-splitting, and the criticism really goes to the directed verdict. It has been said that the restriction is necessary to prevent the jury from giving the plaintiff something in every case, even where the defendant may not be negligent at all, or is at fault to the extent of only 1% of the total. But this ignores the fact that the court still has control over an unjustified apportionment, and that a 1% recovery will be insignificant, and less than the nuisance value of the suit. Actually the writer has found no such cases. *It appears impossible to justify the rule on any basis except one of pure political compromise. It is difficult to be happy about the Wisconsin cases, or to escape the conclusion that at the cost of many appeals they have succeeded merely in denying apportionment in many cases where it should have been made.*" [4] (Emphasis supplied.)

It has also been stated that since *Bielski v. Schulze* (1962), 16 Wis. 2d 1, 114 N. W. 2d 105, has established pure comparative negligence in situations wherein multiple defendants are seeking contribution among themselves, there is no justification for not applying pure comparative negligence between plaintiffs and defendants.

---

[4] Prosser, *Comparative Negligence*, 51 Mich. L. Rev. (1953), 465, 493, 494.

"The plaintiff's right of recovery should be handled the same way. He should be allowed to recover irrespective of how negligent he is. Of course, where his negligence is high in comparison with that of a defendant or defendants, recovery would be reduced in a large degree. The doctrine which bars recovery by a claimant who is 50 per cent or more negligent is the common law bar rule at a different level. *It is a misfit in a system designed to distribute responsibility according to degrees of fault. . . .*" [5] (Emphasis supplied.)

Others have favored the Wisconsin position and have said:

". . . [Pure comparative negligence] would increase claims and litigation. It would put a greater strain on ever increasing insurance rates. It would cause the general public to bear a larger premium for insurance and costs for judicial administration as a result of allowing plaintiffs of greater fault to recover. It would be the first step to a 'no fault' system whereby the wrongdoer is allowed to profit from his own wrong. It is contrary to the basic sense of justice created by the majority of citizens and as such embodied in the historic principles of tort law. . . ." [6]

Although considerable disagreement exists as to whether a doctrine of pure comparative negligence should be adopted in Wisconsin, there has been considerable agreement as to the ability or propriety of this court's initiating such adoption. One writer has said that the Wisconsin doctrine of comparative negligence ". . . is a statutory rule and the court is helpless. . . ." [7] The writer continues by stating:

". . . If the legislature had never developed a comparative negligence doctrine, our supreme court might feel free to act. However, the right of the claimant is now controlled by the 1931 statute. The change should

---

[5] Campbell, *Wisconsin Law Governing Automobile Accidents—Part II*, 1962 Wis. L. Rev. 557, 569.

[6] Ghiardi, 10 *For the Defense*, No. 8 (Oct. 1969), 61, 64.

[7] *Supra*, footnote 5, at page 569.

be made, but it will require action by the Wisconsin Legislature." [8]

In support of the contention that this court has authority to adopt pure comparative negligence, it has been argued in the amicus curiae brief of the American Trial Lawyers Association that the legislature, in enacting sec. 895.045, Stats., did not pre-empt the field of comparative negligence and thereby preclude further development by this court. Analogy is then drawn to this court's decision in *Holytz v. Milwaukee* (1962), 17 Wis. 2d 26, 115 N. W. 2d 618, where in the common-law doctrine of governmental immunity for tort liability was abolished, despite previous legislative activity which had removed immunity in limited circumstances. *See: Farmers Mut. Automobile Ins. Co. v. Gast* (1962), 17 Wis. 2d 344, 117 N. W. 2d 347, for further discussion of legislative pre-emption.

This court, however, has consistently interpreted the statute itself as having created the bar to recovery. The statute says: "Contributory negligence shall not bar recovery . . . *if* such [negligence of the party seeking recovery is] not as great as the negligence of the person against whom recovery is sought. . . ." The natural inference is that if one's negligence is as great, or greater, than the party against whom recovery is sought recovery is denied. Consistent with the interpretation given sec. 895.045, Stats., is *Lawver v. Park Falls* (1967), 35 Wis. 2d 308, 316, 151 N. W. 2d 68. There, in a concurring opinion, Mr. Justice HALLOWS, noting that the statute itself ". . . denies recovery to the plaintiff if his contributory negligence is as great as the negligence of the person against whom recovery is sought, . . ." stated:

". . . The full scope of an apportionment rule could only be attained by amending the statute to remove [the] bar [to recovery]. . . ."

[8] *Id.* at page 569.

If the decisions of this court, forbidding recovery to a plaintiff who is 50 percent or more contributorily negligent, are based upon the legislature's intent in creating sec. 895.045, Stats., rather than upon our own thoughts concerning justice to the parties, the following statement from *Zimmerman v. Wisconsin Electric Power Co.* (1968), 38 Wis. 2d 626, 633, 634, 157 N. W. 2d 648, is applicable:

". . . Where a law passed by the legislature has been construed by the courts, legislative acquiescence in or refusal to pass a measure that would defeat the courts' construction is not an equivocal act. The legislature is presumed to know that in absence of its changing the law, the construction put upon it by the courts will remain unchanged; for the principle of the courts' decision —legislative intent—is a historical fact and, hence, unchanging. Thus, when the legislature acquiesces or refuses to change the law, it has acknowledged that the courts' interpretation of legislative intent is correct. This being so, however, the courts are henceforth constrained not to alter their construction; having correctly determined legislative intent, they have fulfilled their function."

The appellant has argued that he and the people of Wisconsin come to this court for relief from the harsh doctrine of contributory negligence which it has created. This, however, is a somewhat novel approach in that the public is, unlike the instant case, usually represented in a class action. If, in fact, the people of Wisconsin seek redress from this court's application of sec. 895.045, Stats., their petition might better be addressed to the legislative branch of government.

The respondents contend that, while the court is here presented with only a given fact situation, a broad change as sought by the appellant would of necessity affect all areas of negligence law. Since a judicial change of the present comparative negligence doctrine would create questions in situations involving multiple defendants, multiple plaintiffs and joint tort-feasors, respondents

contend that the legislature, which can conduct extensive study, should initiate any necessary change.

In regard to this contention it should be noted that the legislature in its most recent session has established an interim committee to study problems such as those cited by the respondents.[9]

In order to make the current doctrine of comparative negligence function, it was necessary for this court to foster the ultimate fact verdict. In addition, this court has abolished assumption of risk, gross negligence, governmental, charitable, religious and parental immunities. In light of the efforts extended in making the present doctrine function, it would be prudent to allow the legislature to make any changes following a comprehensive study of the problem.

Such a study could consider respondents' assertions that collateral benefits available to negligent plaintiffs are ample protection for those more negligent than the persons from whom recovery is sought. The collateral benefits to which respondents refer are kept regardless of plaintiff's fault and include such things as medical and hospitalization insurance, automobile insurance and social security.

Since poverty can affect defendants as well as plaintiffs, the possibility that given an ultimate fact verdict, which is necessary in implementing any form of comparative negligence, a defendant will always be found partially negligent should be considered. By adopting pure comparative negligence out of a sense of intellectual fairness one might well be eliminating what has been called an arbitrary rule of no recovery, while at the same time creating an arbitrary rule of partial recovery in *all* cases. If such were the case, pure comparative negligence would render defendants the insurers of any who chose to commence an action.

[9] 1969 Senate Joint Resolution 59; 1969 Assembly Joint Resolution 53.

In short, the legislature should consider whether fairness is preserved by applying the comparative negligence doctrine as we now know it or by applying a doctrine of pure comparative negligence.

Without passing judgment upon the merits of pure comparative negligence as opposed to comparative negligence as it is presently applied in this jurisdiction, we think that the legislature is the body best equipped to adopt the change advocated by the appellant. Such was also the decision of the Illinois Supreme Court in *Maki v. Frelk* (1968), 40 Ill. 2d 193, 239 N. E. 2d 445, when it was asked to adopt for general application the doctrine of comparative negligence.

The appellant has requested that if the judgment of the trial court be affirmed he nonetheless be allowed costs on this appeal pursuant to sec. 251.23 (1), Stats. A reading of the statute clearly indicates that costs are allowed in the discretion of this court to the *prevailing party*. No reference is made of allowing costs to the losing party.

*By the Court.*—Judgment affirmed.

WILKIE, J. (*concurring*). I believe there is a need for changing the rule under the Wisconsin comparative negligence system which prohibits a plaintiff from recovering a portion of his damages where his negligence is equal to or greater than the defendant's who is at least partially responsible for his injuries.

Although, in my opinion, the court has the authority to make these changes in the rule, and the legislature has not pre-empted the entire subject, at this time I would defer to the legislature as the proper body to make a complete study of the subject and to adopt changes it concludes appropriate. Therefore, I concur.

I have been authorized to state that Mr. Justice BEILFUSS joins in this concurrence.

HEFFERNAN, J. (*concurring*). I concur in the result and agree that, in view of the legislature's present study of comparative negligence problems, this court should abstain from considering the question raised by the plaintiff-appellant.

I do not agree, however, that the passage of the comparative negligence act has divested this court of its inherent common-law prerogative of reconsidering matters that stem from judicial decision.

HALLOWS, C. J. (*dissenting*). The doctrine of pure comparative negligence should be adopted and the unjust doctrine of contributory negligence repudiated; this can and should be done by this court exercising its inherent power.

I see the justice of the cause and read history differently than does the majority opinion.[1] The doctrine of contributory negligence came into the common law rather late in the development of the fault principle in torts. *Butterfield v. Forrester* (1809), 11 East. 60, 103 Eng. Rep. 926. This doctrine was apparently followed without discussion in *Chamberlain v. Milwaukee & Mississippi RR. Co.* (1858), 7 Wis. 367, 374 (*425, *431), and *Dressler v. Davis* (1858), 7 Wis. 449, 453 (*527, *531), both cases being primarily concerned with the burden of proof. The *Butterfield Case* was based upon a prevalent social-justice concept that a man riding a horse had a greater duty to watch out for his own safety than he had for the safety of others. This concept of contributory negligence is no longer viable in England but has persisted in the United States although with little basis in our current idea of social justice for its survival.

[1] *Lawver v. Park Falls* (1967), 35 Wis. 2d 308, 151 N. W. 2d 68; *Pruss v. Strube* (1968), 37 Wis. 2d 539, 155 N. W. 2d 650; *Spath v. Sereda* (1969), 41 Wis. 2d 448, 164 N. W. 2d 246; Hallows, *Comparative Negligence*, 19 Federation of Insurance Counsel Quarterly, No. 3 (1969), 71.

The doctrine has found no significant support outside of the common law and its adversary, the doctrine of comparative negligence, which places liability upon those causing damage in proportion to their fault is a much older and accepted concept in jurisprudence. The doctrine of comparative negligence in modern English admiralty law goes back to the 17th Century when the concept of fault in negligence as a basis for liability in tort was just becoming popular in the common law. This doctrine of comparative negligence found acceptance in the English Judicature Acts of 1873. Allocation of liability because of the difficulty of proof was divided equally among the ships involved. In 1911 the doctrine of apportionment of damages in proportion to the degree of fault came into the English admiralty law as a result of the Brussel's Maritime Convention of 1901–1910. This convention adopted the rule of pure comparative negligence for admiralty cases and was soon ratified by nearly all the important nations of the world including England but not by this country.[2] Turk, *Comparative Negligence on the March*, 28 Chicago-Kent L. Rev. (1950), 189, 304; Malone, *The Formative Era of Contributory Negligence*, 41 Ill. L. Rev. (1946), 151.

In the field of general negligence the European countries under civil law had moved toward comparative negligence at least one hundred years earlier than its

[2] So much has been written on comparative negligence, it is impossible to cite many of the articles but representative, besides others cited specifically, are: Mole and Wilson, *A Study of Comparative Negligence*, 17 Cornell Law Quarterly (1932), 333, 604; Gregory, *Loss Distribution by Comparative Negligence*, 21 Minn. L. Rev. (1936), 1; Campbell, *Ten Years of Comparative Negligence*, 1941 Wis. L. Rev. 289; Ghiardi & Hogan, *Comparative Negligence*, 9 Wis. Continuing Legal Education (Oct. 1969), p. 1; Comparative Negligence, A. T. L., Monograph Series (1970); Maloney, *From Contributory to Comparative Negligence: A Needed Law Reform*, 11 Univ. Fla. L. Rev. (1958), 135; for a complete bibliography, *see* Institute of Judicial Administration, *Comparative Negligence* (Aug. 15, 1955), pp. 16 to 21.

adoption as an admiralty rule. And on this continent the province of Quebec, Canada, has adopted the doctrine by court decision and other Canadian provinces by statute. The Federal Employer's Liability Act, 45 USCA, sec. 53, and Merchant Marine Act, 46 USCA, sec. 688, provide for apportionment of damages without regard to greater or lesser fault of the injured employee. In the country of its birth, the doctrine of *Butterfield v. Forrester* was laid at rest when England abolished contributory negligence by the English Reform Act of 1945.

This history is convincing that the unjust doctrine of contributory negligence as a bar to a cause of action does not fulfill the needs of society and ought no longer be harbored and nurtured by the common-law courts at the expense of comparative negligence which mitigates damages as justice requires.

In Wisconsin a partial reaction to the harshness of the rule, as in many other states, took the form of special legislation in the areas of employer-employee relationship and of extra-hazardous occupations. *See* sec. 895.37 (1), formerly sec. 331.37 (1), Stats. The Railroad Act of 1875, ch. 173, Stats., cited by the majority, however, was a reaction against the fellow-servant rule, not contributory negligence. That act imputed liability for the negligence of a fellow servant to the railroad and kept contributory negligence as a defense if it materially contributed to the injury. Under this act an employee recovered all his damages or nothing from his employer.

It was not until the enactment of ch. 254 (sec. 1816), Laws of 1907, that the concept of "greater negligence" of a fellow employee of the railroad employer was used as a basis to impute liability to an employer. This act (now sec. 192.50, Stats.), provided that if the negligence of the railroad employee causing the fellow-servant injury was greater and contributed in a greater degree to the injury than the negligence of the injured employee, then the injured employee could recover his full damages.

There was no comparison of negligence for the purpose of determining damages but solely for the purpose of imputing liability to the employer.

In 1913 by ch. 644 of the laws of that year, there was added a comparison of negligence in terms of proportion of negligence in order to mitigate the amount of recovery. From analogy mainly to this statute and to the FELA (45 USCA, sec. 53), the legislature adopted in 1931 what is now sec. 895.045. This section related to personal-injury actions and was expressly addressed, not to comparative negligence, but to the proposition that "contributory negligence shall not bar recovery . . ." This escape from the bar of contributory negligence was in terms of whether the negligence "was not as great as the negligence of the person against whom recovery is sought" and in such cases damages would be "diminished in proportion to the amount of negligence attributable to the person recovering." This statute had two effects: (1) It used the comparison of negligence to determine when contributory negligence was not a bar; and (2) it used comparison of negligence to determine the amount of damages when recovery was allowed.

There is no doubt this law was a great step forward and alleviated some of the hardship of contributory negligence, but its partial repudiation of contributory negligence was not espoused as the best solution to the tort-liability problem but because it was a political compromise as intimated by Prosser, *Comparative Negligence*, 51 Mich. L. Rev. (1953), 465, 493, 494 (a leading article on this problem). The draftsman of the law was a negligence lawyer and a former member of the legislature; it was politically feasible to shift from the Wisconsin railroad cases to the automobile cases the idea of some recovery if one was less negligent. However, FELA, then as now, sec. 53, repudiated contributory negligence as a bar and reduced damages in proportion to the amount of negligence of the injured employee regardless of the de-

gree of negligence. The author of sec. 895.045 has given an account of how he drafted this section on the principle of the federal and Wisconsin acts. He complains, "Many writers have acknowledged the injustice of the old rule, but courts have done nothing towards changing it." *See* Joseph A. Padway, *Comparative Negligence,* 16 Marquette L. Rev. (1931), 3, 4.

While the so-called limited comparative negligence doctrine was an advance step and other states have some form of it,[3] it is almost forty years old and its limitation is not now in accord with modern concepts of social justice. Justice demands a person be held responsible for his acts and to the full extent which they cause injury even though the negligence of other persons may contribute to the same injury. If A, B, and C all cause an injury to the extent of 20, 30, and 50 percent, respectively, they should all pay that portion of the damages. If A, B, and C were defendants or if A was a plaintiff, that is what would happen under the Wisconsin rule. A, as a plaintiff, contributes by assuming his own negligence and only recovering 80 percent of his damages. However, the Wisconsin law works an injustice because if B is the plaintiff, A is let out entirely because B's contributory negligence is greater than A's; and C, although 50 percent negligent, must bear A's 20 percent or a total of 70 percent. If C is not financially responsible, B collects nothing. There is no rhyme or reason in justice why A, being 20 percent at fault, ought not to pay his just proportionate share or why C should pay it without a right to recover in contribution.

It is sometimes argued the doctrine of pure comparative negligence allows one at fault to recover for his own fault.

[3] Arkansas, Georgia, Hawaii, Maine, Mississippi, Nebraska, Puerto Rico, South Dakota, Massachusetts, Minnesota, New Hampshire. *See* Ghiardi & Hogan, *Comparative Negligence,* 9 Wis. Continuing Legal Education (Oct. 1969), 1, 32, *et seq.,* for statutes and commentary.

This is not true because damages are reduced in proportion to the contribution of his negligence whether that be 20, 49, or 60 percent. There is nothing just in requiring a defendant to pay 51 percent of the plaintiff's damages when the plaintiff is 49 percent at fault and allowing the defendant to go scot-free when he is 49 percent at fault and the plaintiff is 51 percent at fault. What is so magic about being less than, greater than, or equally negligent, that justice must depend on it? I suggest that most juries believe when they find a plaintiff and a defendant each 50 percent negligent that the plaintiff will get one half of his damages; but under the Wisconsin rule, he will recover nothing.

The Wisconsin rule is not just a 50-50 deal because the plaintiff's negligence must be compared with the negligence of each defendant separately. If there are two defendants, the plaintiff cannot recover if all parties are all equally negligent. *Schwenn v. Loraine Hotel Co.* (1961), 14 Wis. 2d 601, 111 N. W. 2d 495; *Becker v. Milwaukee* (1959), 8 Wis. 2d 456, 99 N. W. 2d 804; *Walker v. Kroger Grocery & Baking Co.* (1934), 214 Wis. 519, 252 N. W. 721; *Chille v. Howell* (1967), 34 Wis. 2d 491, 149 N. W. 2d 600. If it were a four-car collision, the plaintiff could not recover if he was 25 percent guilty of negligence and all the rest were equally negligent. Where is the justice in denying all recovery to a person 25 percent negligent when the other persons causing it are 75 percent negligent in the aggregate? The plaintiff's chance of recovery ought not to depend upon the fortuitous number of persons responsible for the loss.[4]

---

[4] An interesting case of multiple defendants and where the jury must have used a slide rule is *Quady v. Sickl* (1952), 260 Wis. 348, 51 N. W. 2d 3, 52 N. W. 2d 134. The jury apportioned the negligence: The plaintiff Quady 15.42 percent; defendant Sickl 47.08 percent, defendant Pankratz 23.33 percent, and defendant Belden 14.17 percent. Quady could not recover against Belden and the court held Quady and Pankratz equally negligent; thus Sickl was stuck.

The Wisconsin rule has also worked a hardship in contribution cases because, although *Bielski v. Schulze* (1962), 16 Wis. 2d 1, 114 N. W. 2d 105, established pure comparative negligence in situations where multiple defendants are seeking contribution among themselves, this rule only applies after sec. 895.045, Stats., is applied. Thus, if the plaintiff is 30 percent negligent and defendant A 20 percent, defendant B 10 percent, defendant C 40 percent, while the three defendants are 70 percent guilty, plaintiff can recover only against defendant C who must pay 70 percent of plaintiff's damages and can recover nothing by way of contribution against defendants A and B because they have no common liability with defendant C to the plaintiff.

This court has recognized the hardship of the part of the doctrine of contributory negligence left untouched by sec. 895.045, Stats. Although reiterating that the apportionment of negligence is peculiarly within the province of the jury, this court has granted a new trial in the interests of justice because the apportionment which barred recovery could not stand the test of reasonableness or was unjust. *Korleski v. Lane* (1960), 10 Wis. 2d 163, 102 N. W. 2d 234; *Caldwell v. Piggly Wiggly Madison Co.* (1966), 32 Wis. 2d 447, 145 N. W. 2d 745; *Baierl v. Hinshaw* (1966), 32 Wis. 2d 593, 146 N. W. 2d 433; *Chapman v. Keefe* (1967), 37 Wis. 2d 315, 155 N. W. 2d 13; *O'Leary v. Buhrow* (1946), 249 Wis. 559, 25 N. W. 2d 449; *Pingel v. Thielman* (1963), 20 Wis. 2d 246, 121 N. W. 2d 749; *Korpela v. Redlin* (1958), 3 Wis. 2d 591, 89 N. W. 2d 305; *Bolssen v. Heenan* (1958), 3 Wis. 2d 110, 88 N. W. 2d 32; *Guptill v. Roemer* (1955), 269 Wis. 12, 68 N. W. 2d 579, 69 N. W. 2d 571; *Gremban v. Burke* (1966), 33 Wis. 2d 1, 146 N. W. 2d 453.

The doctrine of pure comparative negligence has been recognized as superior to our present rule by many authorities and students of the problem. Prosser, *Comparative Negligence,* 51 Mich. L. Rev. (1953), 465;

Keeton, *Comment,* 21 Vanderbilt L. Rev. (1968), 906; Leflar, *Comment,* 21 Vanderbilt L. Rev. (1968), 918; Campbell, *Recent Developments of the Law of Negligence in Wisconsin,* 1955 Wis. L. Rev. 5, and 1956 Wis. L. Rev. 4.

It is claimed the adoption of the doctrine of pure comparative negligence would appreciably increase claims or litigation.[5] The argument is not persuasive. If the claims are legitimate and they cannot be settled and litigation results, courts should hear them. What has the number of claims to do with justice? Justice is not secured or maintained by denying a remedy. The amount of crime can be cut down, too, by repealing criminal laws. It is claimed the doctrine would put a greater strain on the ever-increasing insurance rates. This assumes that in a large bulk of cases the plaintiff is more negligent than the defendant and the increase in loss would require increase in rates. This is hardly an argument based upon equity and justice. The merits of this claim have been well answered. Peck, *Comparative Negligence and Automobile Liability Insurance,* 58 Mich. L. Rev. (1960), 689.

It is likewise claimed the doctrine would be a step toward a no-fault system whereby a wrongdoer is allowed to profit from his own wrong. This is a patently fallacious argument because a wrongdoer cannot recover to the extent of his fault but only to the extent of the fault of others. What I do fear is that if the doctrine of pure comparative negligence is not adopted, the whole fault system in torts will be repudiated and a no-fault system akin to workmen's compensation adopted.[6]

It is illogical and unjust to argue collateral benefits are a form of compensation to a plaintiff denied re-

---

[5] Ghiardi, 10 *For the Defense* (Oct. 1969), 61, 64.

[6] Report of Special Committee on Automobile Accident Reparations of the American Bar Association (1969).

covery and therefore no great injustice is done. Medical and hospitalization insurance and social security should not relieve a tort-feasor from liability for his negligence. Suppose a plaintiff has no medical or hospital insurance or is too young for social security? The collateral-source-rule argument should not be allowed to overshadow the justice of pure comparative negligence.

I see no danger that comparative negligence will allow partial recovery in all cases. This argument evinces a curious lack of confidence in the jury system. A jury now finds defendants without fault and will continue to do so regardless of the reduction of damages. What is so unjust in allowing partial recovery in many cases if the defendant is guilty of negligence? The court has the same control over the jury's apportionment, *i.e.* (1) grant a new trial in the interests of justice; and (2) grant a new trial because of the insufficiency of the evidence to sustain the verdict. To avoid another trial in such cases, I would extend the *Powers* rule [7] to include apportionment. *See Firkus v. Rombalski* (1964), 25 Wis. 2d 352, 130 N. W. 2d 835, where a new trial was granted only on the question of apportionment. I think juries should be instructed on the effect of their apportionment of negligence and that their verdict is subject to the control of the court. Juries should know what they are doing and not be allowed to determine a verdict on their false assumptions. This is the view this court took in allowing juries to be instructed on the effect of finding an accused not guilty by reason of insanity in criminal cases. *See State v. Shoffner* (1966), 31 Wis. 2d 412, 428, 143 N. W. 2d 458.

It is also argued it is unfair that both the plaintiff and defendant will recover part of their respective damages under the pure comparative doctrine. I think not. Why in justice should only one person in a lawsuit

---

[7] *Powers v. Allstate Ins. Co.* (1960), 10 Wis. 2d 78, 102 N. W. 2d 393.

recover part or all of his damages and the other injured party nothing? The amount of damages is not determinative of justice. If A and B injure each other and themselves, justice demands that each, to the extent of his fault, should reimburse the other for his damage. Most of the arguments against pure comparative negligence and the dire results which would follow its application to contribution cases were made when this court decided *Bielski v. Schulze, supra.* That decision started out in life with many misgivings on the part of the bar; but in the eight years since its birth, it has waxed strong and the dire results have not come to pass.

The majority of the court states if there is to be any change it should be done by the legislature. This court has never construed sec. 895.045, Stats., to pre-empt the contributory negligence field of the common law. All this court has done was to decide cases under that section and to interpret what its language meant. This is not the same as holding the section pre-empted the field by legislative action or by silence. The doctrine of acquiesence by silence at best is a scapegoat doctrine, and it has no application here. The legislature does not read our advance sheets; and if a few lawyer legislators do, it is not with a supervisory eye. Nor is the use of lay language to describe the results flowing from the application of the section or to loosely characterize it a holding or a decision for pre-emption.

The history of this statute is clear that it was a reaction against the doctrine of contributory negligence but there is nothing in its history or in its language which evinces any intent to pre-empt this field of common law to the exclusion of this court. *See* Note, *Wisconsin Statute Law,* Lambert, 7 Wis. L. Rev. (1932), 122; Campbell, *Wisconsin's Comparative Negligence Law,* 7 Wis. L. Rev. (1932), 222. I think the argument against pre-emption can be based upon an analogy to our action in *Holytz v. Milwaukee* (1962), 17 Wis. 2d 26, 115

N. W. 2d 618, where we abolished governmental immunity even though there was a statutory enactment allowing recovery in a limited area. I find no pre-emption based upon a negative inference of what sec. 895.045, Stats., did not do. The doctrine of pre-emption applied to common-law areas should rest only on affirmative action; otherwise, the death of the common law is near at hand. The doctrine of contributory negligence is a child of the common law and the court can and should replace it with the doctrine of pure comparative negligence.

The concurring opinion in *Lawver v. Park Falls, supra,* is cited in support of pre-emption. My primary argument in that concurring opinion was the injustice of the present rule, not the observation that the change could only be attained by amending the statute. Since that opinion I have continually considered the problem and the methods by which the desirable result could be reached and I have come to the conclusion that this court has the power to abolish what is left of the doctrine of contributory negligence by sec. 895.045, Stats. Timewise, I see no inconsistent position; I am now older and wiser. To quote Justice FELIX FRANKFURTER, "Wisdom too often never comes, and so one ought not to reject it merely because it comes late." *Henslee v. Union Planters Bank* (1949), 335 U. S. 595, dissent p. 600, 69 Sup. Ct. 290, 93 L. Ed. 259.

This court has a duty of leadership to advance the jurisprudence of this state and when an injustice is found in a doctrine of the common law, the court should not have reluctance to correct it. In this case we are asked to do so and we should respond.