Richard N. MacCONNELL et
al., Appellants,

v.

Curtis HILL d/b/a City Exxon, Appellee.

No. 1260.

Court of Civil Appeals of Texas,
Corpus Christi.

June 22, 1978.

Rehearing Denied Aug. 29, 1978.

Thomas M. Andrews, Aransas Pass, for appellants.

B. Mills Latham, Corpus Christi, for appellee.

## OPINION

NYE, Chief Justice.

This is a suit for personal injuries sustained by Richard MacConnell, a six-year old child. The boy's father, Edward P. MacConnell, individually and on behalf of his minor son, brought this suit against Curtis Hill d/b/a City Exxon to recover damages for the personal injuries the boy sustained when he was burned by scalding radiator water which gushed out of an automobile radiator hose that defendant Hill was removing. The jury convicted the defendant of negligence which was found to be a proximate cause of the accident and found contributory negligence on the part of the plaintiff child. In response to the comparative negligence issue, the jury found the child to be 60% negligent and the defendant 40% negligent. The trial court entered a take nothing judgment from which the plaintiffs appeal.

The evidence is virtually undisputed. The boy, with prior consent of his father, accompanied Randy Smith, an adult, to Aransas Pass, Texas, for the purpose of transporting Randy's younger brother to a Little League baseball practice session. Upon arrival at the practice field, Smith noticed that his automobile engine was overheating. They drove to the City Exxon Service Station in Aransas Pass to have the car repaired. Smith parked his car near the repair stalls at the station, opened the hood of the car and discovered a puncture in the main large radiator hose connecting the radiator to the engine.

Defendant Hill, the lessee and operator of the service station, did not want to repair Smith's car as it was almost time for him to close. However, Hill reluctantly agreed to make the repairs although Smith did not have any money, but did have an Exxon credit card in his possession. Smith's car was a 1973 model Pontiac. It had a pressure release system whereby pressure on the radiator and the connecting hoses could be pre-released by loosening the radiator cap. The repairs could then be accomplished by simply removing and replacing the punctured hose. Smith and the plaintiff child stood near the car as Hill commenced the repairs. Without first releasing the pressure in the radiator hose, Hill removed the end of the hose attached to the top of the radiator, spraying the boy with hot water and steam which gushed out of the hose.

The case was tried to the jury primarily on depositions. In response to special issues, the jury in relevant parts found: 1) that defendant Hill was negligent in failing to release the pressure from the car's cooling system before removing the radiator hose which was a proximate cause of the accident in question; 2) that Richard MacConnell, the child, was negligent by failing to keep a proper lookout for his own safety which was a proximate cause of the accident; 3) that Richard MacConnell, the child, was also negligent in standing in close proximity to the automobile which was a proxi-

mate cause of the accident; and 4) that 60% of the negligence was attributable to Richard MacConnell, the child, and 40% to defendant Hill.

Plaintiffs bring forward three points of error on appeal. Plaintiffs' third point of error complains of the factual insufficiency of the evidence relative to the jury's answer to the comparative negligence special issue. In deciding such an insufficient evidence point, this Court is required to consider all of the evidence and to determine whether such finding is so against the overwhelming weight and preponderance of the evidence as to be clearly wrong. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). The testimony of both the defendant, Hill, and the adult, Randy Smith, who accompanied the child, indicates that these witnesses are in virtual agreement as to the events that culminated in the accident in question.

The evidence is that immediately prior to the incident in question, Hill, who was working on the radiator hose, was standing on the left-hand side of the car (driver's side) because of the location of the hose in question. Smith was standing near the front of the car by the right fender and the plaintiff child was standing directly in front of the car's open hood. The record shows that Hill and Smith asked Richard to move away from the car. Richard immediately started to back up after defendant Hill asked him to move back. Smith noticed that Richard was not moving back far enough. He then asked Richard to move clear out of the way. Richard thereafter immediately changed his backward direction by turning to his left. As Richard was starting to move, but before he could reach a position far enough back and to the left, the defendant pulled the radiator hose from the radiator, spraying the child with the hot radiator water and steam.

Defendant Hill admitted that after the time he requested Richard to move, he did not look to see if the child remained in dangerous proximity to the car. Hill also admitted that every day he had to warn adult people to stay out of his way while he was attempting to make repairs. Referring

to the people who come to his station to have their cars repaired, he testified as follows:

"I tell them every day to get out of the way when you go to change a tire. I'll bet you when you go to change your tires at a station somewhere, you're right up there with your nose right up there to see what is going to happen. Everybody is that way. They ain't no different from anybody."

This testimony clearly shows that it was within Hill's experience that adults regularly position themselves dangerously close to Hill's work area. This testimony also indicates that Hill had to frequently warn adults of the dangers incident to routine repairs.

The jury found that the defendant Hill was negligent in failing to release the pressure from the car's cooling system before pulling off the top radiator hose and that such failure was negligence. The jury further found that the six-year old child failed to keep a proper lookout for his own safety and was negligently standing in a position near the automobile while under repair by defendant Hill. The jury found that each of these negligent acts of the defendant and the child were a proximate cause of the occurrence in question. Finally, the jury was asked, conditioned on its finding that these acts or omissions proximately caused the occurrence in question, "what percentage of the negligence that caused the occurrence do you find from a preponderance of the evidence to be attributable to each of the parties found by you to be negligent?" The jury found: "Curtis Hill *40%*. Richard N. MacConnell *60%*."

As a general rule, in Texas, a child who is beneath the age of five is incapable of negligence as a matter of law. *Yarborough v. Berner*, 467 S.W.2d 188, 190 (Tex. Sup. 1971). Where the negligence of a child above the age of five is at issue, the child's negligence is to be judged by a standard of conduct applicable to a child of the same age (six) and not by that standard that is applicable to an adult. *Yarborough*, supra; *Rudes v. Gottschalk*, 159 Tex. 552, 324

S.W.2d 201, 204 (1959); *Dallas Ry. & Terminal Co. v. Rogers*, 147 Tex. 617, 218 S.W.2d 456 (1949); *Texas & Pacific Ry. Co. v. Crump*, 102 Tex. 250, 115 S.W. 26 (1909); *Texas & Pacific Ry. Co. v. Phillips*, 91 Tex. 278, 42 S.W. 852 (1897); *Missouri, Kansas & Texas Ry. Co. v. Rodgers*, 89 Tex. 675, 36 S.W. 243 (1896).

The Supreme Court in *Rudes v. Gottschalk*, supra, in a well-written opinion by Justice Norvell, outlined the conceptual difficulties inherent in a case when both the negligence of a child and an adult are in issue. There, Justice Norvell said: "We may perhaps safely say that legal liability will not attach to an act or omission unless the alleged wrongdoer could have reasonably anticipated probable harm from his conduct. Foreseeability is undoubtedly a test of negligence, for certainly a prudent man would not do that which he could foresee would result in harm." *Rudes*, supra, at 206. The Supreme Court, in *Rudes*, concluded that when the asserted negligence of a child and that of an adult are in the same occurrence, the standard of care applicable to each must be separately defined.[1] These definitions in substantially the same form were given by the trial judge.[2]

In the case before us, the jury was asked to compare and to assign the percentage of negligence applicable to the adult Hill and to the six-year old child, MacConnell. However, the record indicates to us that the jury did not consider that a different standard of care was applicable to the child, as opposed to that of an adult, when they answered the comparative negligence question.

The evidence shows without dispute that defendant Hill repaired automobiles nearly every day. He admitted that he had to warn adult people to get out of his way to keep from being hurt. He stated that they were always right up there under his nose to see what was going to happen. "Everybody is that way. They (adults) ain't no different from anybody." It is obvious that Hill, in telling the child to back away from the car, was treating the child no differently from anybody else. He admitted that after he instructed the child to move away from the car, he did not check further to see if the child had complied.

The evidence shows that Hill was negligent in failing to release the steam pressure in the radiator prior to removing the hose in question. Had he released the pressure, the accident would not have happened. Had he seen to it that the child was out of danger, the steam and hot water would not have reached the child and Richard, obviously, would not have been injured.

Although the child failed to keep a proper lookout for his own safety, as the jury has found, and was negligent in standing near the automobile, it must be remembered that adults also stood close by while repairs were going on and they had to be repeatedly warned to stay at a safe distance. Young boys are very curious as a rule, and no different than adults except as to their ability to foresee and anticipate danger, and the harmful consequences that may happen as a result of their curiosity.

The evidence showed that the child was attempting to comply with Hill and Smith's instructions. Richard was moving back when first instructed, and moving away to his left as a result of the second admonition

1. The term "ordinary care" as applied to the conduct of children has been defined as "such care as an ordinarily prudent child of the age, intelligence, experience and the capacity of [the child in question] would have exercised under the same or similar circumstances." *Rudes v. Gottschalk*, supra at 206–207.

2. " 'Ordinary care' when used with respect to the conduct of a child, means that degree of care which an ordinary prudent child of the same age, experience, intelligence and capacity would have used under the same or similar circumstances.

'Negligence', when used with respect to the conduct of a child, means failure to do that which an ordinary prudent child of the same age, experience, intelligence and capacity would have done under the same or similar circumstances doing that which such a child would not have done under the same or similar circumstances."

at the same instant that the defendant Hill pulled the hose loose from the radiator. Had Hill checked to see if the six-year old child was out of danger, the injury would not have taken place.

■ Having reviewed all of the evidence in the record, we find that the jury's answer apportioning 60% of the negligence causing the injuries to the child is so against the overwhelming preponderance of the evidence as to be clearly wrong. This requires us to reverse the case and remand the same for a new trial. *In re King's Estate,* supra.

■ The jury found that the child had incurred expenses for the necessary medical and hospital care in the amount of $653.80. The evidence supplied by Dr. Pounds and Nurse Berry, which was uncontradicted, showed that the child suffered severe pain and discomfort, permanent scarring injuries which were the result of second and third degree burns that he received as a consequence of the event. However, the jury, when asked what sum of money, if any, would reasonably compensate the child for his injuries considering physical pain and mental anguish in the past and physical pain and mental anguish in the future and disfigurement, the jury answered, "none". This is clearly against the great weight and preponderance of the evidence. Appellants' first three points of error are sustained.

In the retrial of this case, the court should instruct the jury as to ordinary care, negligence and proximate cause in the same manner as it did in this case immediately prior to the listed negligence issues as to defendant Hill, the adult. When it comes to the submission of issues that affect the child's negligence, the court should also instruct the jury immediately prior to issues as to ordinary care, negligence and proximate cause concerning a child's degree of care. The "proximate cause" definition as it affects the child should follow the definition set out by the Supreme Court in *Rudes v. Gottschalk,* supra. See also *Texas Pattern Jury Charges,* 2.05, Child's Degree of Care, comment on page 49.

■ We are also of the opinion that in any case where the jury is asked to apportion the negligence between a child and an adult, an additional instruction should be given which again apprises the jury that a different standard should be applied in determining the negligence of a child when compared to the negligence of an adult. The Supreme Court, in *Rudes,* did not consider this precise question because that case was decided prior to the time Texas adopted the comparative negligence statute, Tex. Rev.Civ.Stat.Ann. art. 2212a (Sup. 1978). The Texas comparative negligence statute is based on a similar Wisconsin comparative negligence statute. See e. g., *Leyva v. Smith,* 557 S.W.2d 169, 170–71 (Tex.Civ. App.—San Antonio 1977, no writ). The Wisconsin Supreme Court recently addressed this problem and approved the following instruction to accompany the comparative negligence special issue:

" 'In answering the comparison negligence question, if you are to answer it, you should take into consideration that [*name*] was an adult and [*name*] was a child.' "

See *Gremban v. Burke,* 33 Wis.2d 1, 146 N.W.2d 453, 456 (1966). We agree that this instruction would adequately apprise and remind the jury that a different standard should be applied in determining the negligence of a child when compared to the negligence of an adult. Such an instruction is also consistent with the principles outlined in *Rudes* which, in effect, require that the jury's attention be directed to the different standards applicable to children as each special issue relates to the child's conduct is answered.

The judgment is accordingly REVERSED and the cause is REMANDED to the trial court for a new trial in accordance with the instructions contained in this opinion.